BETHLEHEM CHRISTIAN FELLOWSHIP, INC. *v.*
PLANNING AND ZONING COMMISSION OF
THE TOWN OF MORRIS
(AC 21614)

Flynn, Bishop and Hennessy, Js.

Argued June 12—officially released November 5, 2002

*Kenneth R. Slater, Jr.*, for the appellant (plaintiff).

*Andrew W. Roraback*, for the appellee (named defendant).

*Jeanne Farrell*, pro se, the appellee (intervening defendant).

*Stephen Reinhold*, pro se, the appellee (intervening defendant).

*Opinion*

HENNESSY, J. The plaintiff, Bethlehem Christian Fellowship, Inc., appeals from the judgment of the trial court dismissing the plaintiff's appeal from the decision of the defendant planning and zoning commission of

the town of Morris (commission), which denied the plaintiff's application for a special exception to construct a house of worship in a residential area.[1] The plaintiff claims that the court improperly dismissed its appeal by sustaining five of the commission's six reasons to deny the special exception, where the town's zoning regulations provide that houses of worship may be located only in residential zones pursuant to a special exception.[2] We reverse the judgment of the trial court.

## FACTS

Our review of the return of record discloses the following facts. On October 1, 1997, the plaintiff, a tax-exempt, religious, Connecticut corporation, filed an application with the commission for a special exception. At the time of the application, the plaintiff's membership totaled ninety people from fifteen families.[3] The special exception application sought permission to con-

[1] Jeanne Farrell and Stephen Reinhold are intervening pro se defendants. They have adopted the position of the commission.

[2] The plaintiff also raised a constitutional claim that the court improperly determined that the commission's denial of the application for a special exception to construct a house of worship in a residential zone, which is the only zone in which houses of worship may be constructed in the town, did not infringe on the rights of the plaintiff's members pursuant to the federal and state constitutions. Because we resolve the plaintiff's appeal on nonconstitutional grounds, we need not address its constitutional claim. It is well settled that we need not reach an appellant's constitutional claims if the appeal can be sustained on nonconstitutional grounds. *Grace Community Church* v. *Planning & Zoning Commission*, 42 Conn. Sup. 256, 259, 615 A.2d 1092 (1992), aff'd sub nom. *Grace Community Church* v. *Bethel*, 30 Conn. App. 765, 622 A.2d 591, cert. denied, 226 Conn. 903, 625 A.2d 1375, cert. denied, 510 U.S. 944, 114 S. Ct. 383, 126 L. Ed. 2d 332 (1993), citing *State* v. *Zach*, 198 Conn. 168, 177, 502 A.2d 896 (1985); *Maloney* v. *Pac*, 183 Conn. 313, 324, 439 A.2d 349 (1981).

[3] For approximately ten years prior to filing the application for a special exception, the plaintiff's members conducted services in the Litchfield Grange Hall, which they rented. The plaintiff engaged the services of several Realtors to find suitable property on which they could construct a meeting-house. The grange submitted a favorable reference in support of the plaintiff's application for a special exception.

struct a house of worship on lot number nine of the Mosimann resubdivision at 450 West Morris Road, which is approximately 5.09 acres.[4] The application represented that the land is in a residential R-60 district and that the requested use is an authorized special exception under §§ 21 and 22 of the Morris zoning regulations.[5] The structure is to encompass an area approximately fifty feet by eighty-five feet at the rear of the parcel. The plaintiff intends to use the house of worship for Sunday morning services, midweek meetings and occasional outings and weddings. All of the functions held in the facility will be related to the plaintiff's religious purpose. The plaintiff will not lease the premises to others and will not tolerate the consumption of alcohol thereon.

---

[4] Catherine Mosimann, Robert Mosimann, Walter Mosimann, Jr., and Deliska Bates also were applicants, but they are not parties to this appeal. On May 22, 1996, the plaintiff entered into a contract with Catherine Mosimann and the estate of her late husband, Walter Mosimann, to purchase the subject real property. The contract of sale is contingent on the plaintiff's obtaining a special exception. The commission denied the plaintiff's application for a special exception and the plaintiff appealed. The trial court dismissed the appeal, concluding that the plaintiff was not aggrieved by the commission's action. This court reversed the judgment of the trial court, concluding that the plaintiff was aggrieved by the commission's denial of the application due to the facts of this case. See *Bethlehem Christian Fellowship, Inc.* v. *Planning & Zoning Commission*, 58 Conn. App. 441, 755 A.2d 249 (2000). The matter was remanded to the trial court, which dismissed the plaintiff's appeal on the merits.

[5] Section 21, residence R-40 district, of the Morris zoning regulations provides in relevant part: "Special exception uses: All Special Exception uses shall be subject to the general and specific requirements of Section 52 and, where applicable, the requirements of Section 67. . . .

"4. The following uses when conducted by a non-profit corporation and not as a business for profit; churches and places of worship; parish halls; schools; colleges; libraries; universities; general hospitals; cemeteries; and educational, religious, philanthropic and charitable institutions. . . .

"16. Accessory uses customary with and incidental to any aforesaid Special Exception use. . . ."

Section 22, residence R-60 district, of the Morris zoning regulations provides in relevant part: "Special Exception Uses: Any Special Exception use permitted in Section 21."

The commission held a public hearing on the application on October 15, 1997.[6] The proposed house of worship is designed to look like a single-family dwelling that could be converted to a single-family residence if the plaintiff should ever leave the premises. Photographs of contemporary houses on the same side of West Morris Road and the architectural renderings of the house of worship depict structures of a similar design. The 4100 square foot wooden structure proposed by the plaintiff is to be situated on the northeast corner of the parcel. The topography of the parcel slopes away from West Morris Road and therefore the house of worship will not be distinctly visible from the road. A stone wall and vegetation will partially obscure a view of the building. The front of the building will face the road, and the parking lot, which will accommodate fifty vehicles, will be behind it.

The plaintiff's expert, a registered professional engineer, explained that the layout and design of the house of worship substantially satisfies the town's zoning requirements.[7] The size of the lot is 221,000 square feet

---

[6] The commission held a prior hearing on the application, which it denied without prejudice when it discovered that the audio recording of the hearing was defective. The plaintiff immediately resubmitted the application, and the subject public hearing was held.

[7] Section 22 of the Morris zoning regulations provides the following requirements within an R-60 residential district:

"Lot Area, Shape and Frontage:

"1. Minimum Lot Area 60,000 square feet

"2. Minimum Frontage 175 feet

"Height:

"1. Maximum Number of Stories $2^{1/2}$ stories

"2. Maximum Height 35 feet

"Setbacks:

"1. Minimum setback—principal building* from street line 35 feet

"2. Minimum setback—principal building* from all other property lines 30 feet

"3. Maximum projection of principal or accessory building or structure into setback area 3 feet

"4. Minimum setback for all detached accessory buildings and structures:

"a. from the street line 50 feet

with 484 feet of frontage. The front yard setback is 155 feet, the sideline setback exceeds 200 feet and the rear yard setback is more that 160 feet. The ratio of the floor area of the proposed structure to the gross size of the lot is 4 percent, and the lot coverage ratio is 2 percent. Although the zoning regulations do not restrict the height of a house of worship, the maximum height of the proposed structure is twenty-eight feet. The parking lot will accommodate fifty vehicles, where zoning regulations for a building with a similar seating capacity require a minimum of forty spaces.[8] In response to concerns raised by the fire marshal, Robert Mosimann has agreed to construct a fire pond on his property to supply water for the neighborhood.[9]

The land on which the plaintiff proposes to construct its house of worship is adjacent to two sand and gravel operations and a septic lagoon that has been condemned by the state. The property across the road from the proposed site is occupied by two older house trail-

---

"b. from all other property lines 20 feet

"*an accessory building or structure which is attached to or located within five feet of the principal building shall be subject to the minimum setback requirements for principal building.

"Lot coverage:

"1. Maximum Floor Area Ratio 20%

"2. Maximum Coverage by Building and Structures 15%"

[8] The seating capacity of the proposed building is 200. Section sixty-one—parking and loading—of the Morris zoning regulations provides in relevant part: "*General*: Parking spaces and loading spaces shall be provided off the street for any use of land, buildings or other structures in accordance with the standards and requirements hereinafter specified. . . .

"*Parking Spaces*: Off-street parking spaces shall be provided in such number and location specified as follows . . .

"2. *Auditorium (churches, places of worship, theaters, assembly halls or stadium)*: one (1) space for each five (5) seats, and located on a lot not more than 300 feet in a direct line from the building; if the building is located in a Residence District, such parking spaces shall be located on the same lot with the building. . . ." (Emphasis in original.)

[9] In addition to its application, the plaintiff filed a site plan, a sewage disposal plan, a plan approved by the Torrington health district for a septic permit, driveway culvert drainage computations and building plans.

ers. The area along West Morris Road is rural in character and contains single-family residences, among other uses.

At the commission's request, the plaintiff engaged the services of an expert to study the effect, if any, the house of worship may have on vehicular traffic on West Morris Road. The commission also asked that the study be based on a "worst case" scenario, i.e., 200 people attending Sunday worship services and fifty people attending Wednesday evening meetings. There were three components of the traffic study: A safety evaluation of access into and out of the property; an evaluation of the effect, if any, on the flow of traffic caused by vehicular traffic to and from the property; and an evaluation of traffic safety on West Morris Road. West Morris Road is approximately four miles in length and runs north and south between state Routes 202 and 109.[10]

The study concluded that traffic safety on West Morris Road would be virtually unaffected by the plaintiff's house of worship. Applying state department of transportation guidelines to the posted and recorded speed of traffic on West Morris Road, the expert concluded that a 265 foot sight line was needed on both sides of the entrance to the house of worship to ensure that vehicles could safely enter and leave the premises. The application proposed sight lines of approximately 445 feet north of the entrance and 590 feet to the south of the entrance.

The state department of transportation utilizes a three tiered level of traffic service to describe traffic

---

[10] The plaintiff's traffic safety report described West Morris Road in relevant part. "A field view of the area showed that West Morris Road follows a downgrade in approaching the site from the south, then goes through a reverse curve in crossing the Bantam River bridge north of the site, and then proceeds northerly in an upgrade. The width of West Morris Road south of the site is 21 feet, at the proposed site drive location is 27 feet, at the Bantam River Bridge is 19 feet, and then varies from 22 to 27 feet from the bridge northerly to Route 202."

flow or congestion. The A level of service means virtually no delay. The plaintiff's study demonstrated that both before and after the construction of the proposed meetinghouse, even under the worst case scenario, West Morris Road would have an A level rating of traffic service. Finally, the expert obtained accident data records for West Morris Road between 1993 and 1995 from the state police barracks in Litchfield. Only one accident had occurred on the road during that time. The accident was caused by a person operating a vehicle while under the influence of intoxicating drugs or alcohol and was not due to a defect in the road. The accident also did not occur near the site of the proposed entrance to the house of worship.

The traffic safety report of the plaintiff's expert was reviewed by an independent professional engineer at the request of the town's zoning enforcement officer. The independent analysis concluded that the plaintiff's study was consistent with standard traffic engineering practices and that the conclusion that the proposed house of worship would have a minimal effect on traffic safety and operations on the surrounding roadways was consistent with the data presented and its own independent field investigation.

Counsel for the plaintiff informed the commission that the plaintiff was ready, willing and able to take whatever action was necessary to satisfy the commission's concerns with technical aspects of the proposed house of worship. He also informed the commission that the plaintiff was willing to submit to reasonable conditions that the commission might impose on the granting of the special exception.

A number of people attending the hearing spoke in opposition to the special exception. One individual wanted a guarantee that the value of his real property would not be diminished as a result of the construction

of a house of worship on West Morris Road. Another individual indicated that due to the toxic site adjoining the plaintiff's parcel, the parcel was not appropriate for a residence. He also considered West Morris Road too dangerous to cross safely. Another person expressed concern that the plaintiff had ulterior motives in wanting to construct its house of worship on a five acre lot in a rural setting, citing a day camp operated by a religious organization in another part of Litchfield County. A resident of the area offered an implied threat to the members of the commission.[11] Several others spoke against the house of worship, opining that no public building should be permitted in a single-family residential neighborhood and that a "huge public building" did not make sense in the neighborhood. Others feared the increased traffic, noting that many people walk, jog, and ride bicycles or horses along the road. One person noted that eighteen-wheel trucks use West Morris Road daily to go to and from the gravel pits and that more traffic was not needed.

Several people did not want the increased traffic on their rural road and thought that houses of worship should be built in villages or in more commercial areas adjacent to state highways. The chairwoman of the commission read into the record a letter from an opponent, stating in part: "Our spot in Morris is unusual and special, even for rural Morris, because it is so very quiet and peaceful and natural. It is the quiet . . . that is so wonderful . . . . It has become apparent that the presence of the [plaintiff's house of worship] would destroy the peace and quiet of our beautiful place."

---

[11] The resident stated on the record in relevant part: "[Y]ou as a board are the only ones who can stop this. You're town people. I'm not sure that everybody who wants the facility put in are from the town. Are you here to do this for the good of the town or for the good of independent thing? God's not going to condemn you if you say no. We may condemn you if you say yes."

The attorney representing more than fifty individuals opposed to the special exception stated to the commission in part: "Under Connecticut law, the church can have a wide variety of activities additional to what we may think of as traditional worship activities that are sanctioned by the law. These activities, in our opinion, could well be detrimental to the neighborhood and would tend to devalue the property values."

In support of his clients' position concerning real estate values, the attorney called a real estate appraiser, Arthur P. Oles, to address the commission. Oles considered all of West Morris Road to be a neighborhood. In response to a question from the commission's chairwoman, he replied that he knew of no other church in a similar neighborhood. Although Oles stated that there were nonconforming uses in the neighborhood and, despite the fact that he could make no comparisons, opined that "[a]ny use not in conformity with the neighborhood could have and will have an adverse effect on property values. They're not going . . . the property values are not going to go up because of this church. There's only one way they can go . . . they're going to go down, they're not going to stay the same."[12]

---

[12] Subsequent to the commission's hearing on the plaintiff's first application; see footnote 6; Oles wrote a letter to the commission chairwoman at the request of one of the members of the commission. Oles' letter contained twelve points, the most relevant of which were: "3. Use of the property for a church is an inappropriate use of the land. Most if not all appraisers would conclude that the highest and best use of the site is for a single-family dwelling in conformity *with the neighborhood.* 4. Street consists of mostly very well maintained one-family dwellings. Immediate neighborhood consists of ten yr.-150-yr. old homes in the $150,000-$500,000 price range. 5. Street is zone R-60 Residential. The highest and best use of the subject site is for a one-family dwelling, not a church and ancillary uses. . . . 8. It is not a question of a church. It is any other use than a single-family house. This is a rural residential location on a town road. . . . 10. Other churches are in the center of the communities, built in the 18th, 19th and early 20th centuries. West Morris Road is on the way to, not in, a community. Thus, there are no 'comparables' to compare with. . . . 12. CONCLUSION. The adverse effect on property values in the immediate neighborhood can easily be 10%-20%, if not more for the most expensive home opposite the proposed

The evidence presented by the plaintiff's real estate appraiser, L. Cleveland Fussenich, was similar in that he, too, could offer no comparisons to demonstrate the effect a house of worship has on the value of residential property in a neighborhood such as West Morris Road.[13] At the conclusion of the hearing, the commission chairwoman commented that neither appraiser was able to offer an opinion on the basis of comparisons with comparable situations as to whether property values would decline as the result of the plaintiff's house of worship being built on the subject land.[14]

The chairwoman of the commission also commented regarding the meaning of the term "neighborhood," which the Morris zoning regulations do not define. In asking the plaintiff's counsel how the commission should think of a neighborhood, the chairwoman stated

church, since that market can easily buy wherever it pleases. The church does not conform to the neighborhood, with no transition in character between the nearby single family homes and the proposed one." (Emphasis in original.)

[13] At the public hearing, Fussenich stated in part: "I'm not here to claim that it would not have an effect on the values of the surrounding properties. It could, however. In my opinion, the effect would probably be minimal and I certainly know of no other examples that are similar to this where it can be proved that this type of development diminishes the value of surrounding properties. I don't know of any others in this area, and so it seems to me that it is very difficult to prove that this will have a lessening of values on properties around it. It could, but I don't believe that anybody can say that with certainty."

[14] The chairwoman of the commission commented to the plaintiff's counsel at the conclusion of the hearing in relevant part: "Both your expert, Mr. Fussenich, and . . . Mr. Oles both testified in answering my question that they have not been faced or could find a comparable situation where a church was being offered in a residential zone. So, they couldn't give us an opinion as to whether or not property values could go down. They were only saying it could . . . it may or it may not. So, I kind of feel that both experts testified in answer to my question similarly that the vehicular traffic to get to this site is two miles off . . . two to three miles off of main roads to get here, where the other comparables that they referred to were all built on the corners of town roads but also on main roads or accessibility to the main road."

in part: "I wonder, in determining neighborhoods, as commissioners, if you feel that we should take into account that when we are in a, quote, neighborhood, whether it be an eighth of a mile, a half a mile or ten miles or five miles or a street, whatever we classify a street. We consider West Morris Road on this commission a connecter road because it connects from Route 202 to Route 109. So, there's called Todd Hill Road in Lakeville and Stoddard Road. They're considered connector roads because they connect . . . Todd Hill Road connects to Bethlehem from one road to another. So, we call those connector roads. In determining and defining neighborhoods, as commissioners, I think that our responsibility is to take into . . . account how large these parcels are that these people own. Does someone live on two acres over there, does someone live on ten acres over there. I would consider my neighbor if he was ten miles away. If someone owned the property between my house and my closest neighbor and it was five miles. I would still consider that my neighborhood . . . neighbor and he would be in my neighborhood if I was referring to a neighborhood. I wonder if you think we should look at it differently? In looking at neighborhoods as commissioners when we look at . . . what we're living in in the town of Morris." The plaintiff's counsel responded that what constitutes a neighborhood is a legal question. The chairwoman agreed.

By letter dated November 12, 1997, the town zoning enforcement officer informed the plaintiff that the commission had denied the plaintiff's application for a special exception on November 5, 1997.[15] The letter stated six reasons for the commission's denying the plaintiff a special exception:

---

[15] The commission voted six to one, with one abstention, to deny the application for a special permit.

"1. Based on the testimony received at the Public Hearing by Real Estate Appraisers, Mr. Oles and Mr. Fussenich, that a public building of this size may and will decrease property values in this R-60—single-family dwelling district;

"2. Based on the Traffic Study submitted by the Applicant's Traffic Engineer and based on the personal knowledge of the Commission as to the nature of the Town Access Road and Site Lines associated with this parcel that any increase in traffic at this location could create a hazardous situation, especially considering the grade and curves involved and the inclement weather driving conditions on this road;

"3. Based on the testimony of Property Owners residing on both sides of this North and South connector town road to Routes 202 and 109 regarding their concern for public safety and the safety of their children from the anticipated increase use of this site;

"4. Based on the testimony of various property owners and their attorney regarding the potential for increasing the level of activity associated with this type of facility, as well as the inability of the Commission to control any future expansion. See *Beit Havurah* v. *Zoning Board of Appeals*, 177 Conn. 440, 418 A.2d 82 (1979);

"5. Based on Morris Zoning Regulations section 52-1—character—wherein this building will not be in harmony with and conform to the orderly development of this neighborhood;

"6. And based on Morris Zoning Regulations section 52.5—neighborhood—wherein the Site Plan and Architectural Plans will not harmonize with the neighborhood and enhance the appearance and beauty of the community and conform to the specific standards as

set out in the Town Plan of Development for the orderly growth of the Town of Morris."

The plaintiff appealed from the commission's decision to the trial court, which, after remand from this court; see footnote 4; dismissed the plaintiff's appeal. The court sustained five of the reasons given by the commission to deny the special exception. It sustained the plaintiff's appeal as to fourth reason, i.e., that the commission would not be able to control future expansion.[16] We granted the plaintiff's petition for certification to appeal.

## STANDARD OF REVIEW

Not too long ago, this court reprised the standard of review applicable to an appeal from a zoning commission's decision with respect to a special exception. See *Quality Sand & Gravel, Inc.* v. *Planning & Zoning Commission*, 55 Conn. App. 533, 738 A.2d 1157 (1999). "When considering an application for a special exception, a zoning authority acts in an administrative capacity, and its function is to determine whether the proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and statutes are satisfied. . . . It has no

---

[16] With respect to the fourth reason, the court cited the Morris zoning regulations, common law and constitutional law as authority for the commission to grant the application for a special exception subject to reasonable regulations. Section 52 of the Morris zoning regulations provides in relevant part: "All special exceptions may be approved subject to appropriate conditions and safeguards necessary to conserve the public health, safety, convenience, welfare and property values in the neighborhood." "[P]roperty whose use constitutes a permitted use is not immune from regulation under the laws of nuisance or other applicable statutes such as those relating to public safety . . . ." *Beit Havurah* v. *Zoning Board of Appeals*, supra, 177 Conn. 443. Houses of worship "may be subject to reasonable regulation regarding their location without violating the constitutional guarantee of freedom of religion." *St. John's Roman Catholic Church Corp.* v. *Darien*, 149 Conn. 712, 720, 184 A.2d 42 (1962). The commission has not cross appealed from the court's sustaining the plaintiff's appeal with respect to the fourth reason.

discretion to deny the special exception if the regulations and statutes are satisfied." (Citation omitted; internal quotation marks omitted.) Id., 537. That standard of review is consistent with our Supreme Court's decision in *Irwin* v. *Planning & Zoning Commission*, 244 Conn. 619, 626, 711 A.2d 675 (1998), on which the commission relies.[17]

"When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision. . . . The zoning board's action must be sustained if even one of the stated reasons is sufficient to support it. . . . In light of the existence of a statutory right of appeal from the decisions of local zoning authorities, however, a court cannot take the view in every case that the discretion exercised by the local zoning authority must not be disturbed, for if it did the right of appeal would be empty . . . ." (Citations omitted; internal quotation marks omitted.) *Quality Sand & Gravel, Inc.* v. *Planning & Zoning Commission*, supra, 55 Conn. App. 537.

"The general considerations such as public health, safety and welfare, which are enumerated in zoning regulations, may be the basis for the denial of a special permit. *Irwin* v. *Planning & Zoning Commission*, [supra, 244 Conn. 627]; *Whisper Wind Development Corp.* v. *Planning & Zoning Commission*, 229 Conn.

---

[17] The facts of *Irwin* are distinguishable from the facts here. In that case, there was substantial evidence in the record to support the zoning commission's decision to deny the special permit on the basis of expert testimony regarding the fragility of the land, streambelt concerns and septic systems relating to steep slopes and soil types. *Irwin* v. *Planning & Zoning Commission*, supra, 244 Conn. 633. There was substantial evidence to support other reasons cited as well. In that case, the plaintiff sought a special permit to subdivide real property with two interior lots that was contrary to the town's objective to preserve important natural resources. Id., 623–24. More importantly, however, the higher level of scrutiny that applies to religious organizations such as the plaintiff here, was not a factor in *Irwin*.

176, 177, 640 A.2d 100 (1994). [B]efore the zoning commission can determine whether the specially permitted use is compatible with the uses permitted as of right in the particular zoning district, it is required to judge whether any concerns, such as parking or traffic congestion, would adversely impact the surrounding neighborhood. *Barberino Realty & Development Corp.* v. *Planning & Zoning Commission,* 222 Conn. 607, 613, 610 A.2d 1205 (1992). Connecticut courts have *never* held that a zoning commission lacks the ability to exercise discretion to determine whether the general standards in the regulations have been met in the special permit process. . . . If the special permit process were purely ministerial there would be no need to mandate a public hearing. . . . *Irwin* v. *Planning & Zoning Commission,* supra, 627." (Emphasis in original; internal quotation marks omitted.) *Quality Sand & Gravel, Inc.* v. *Planning & Zoning Commission,* supra, 55 Conn. App. 537–38.

"Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The . . . trial court had to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. . . .

"If, in denying the special permit, the zoning commission construed the special exception regulations beyond the fair import of their language, then the zoning commission acted in an arbitrary and illegal manner. . . . In situations in which the zoning commission does

state the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations. . . . [O]n factual questions . . . a reviewing court cannot substitute its judgment for that of the agency. . . . If there is conflicting evidence in support of the zoning commission's stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given. . . .

"The evidence, however, to support any such reason must be substantial . . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . The substantial evidence rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration." (Citations omitted; internal quotation marks omitted.) Id., 538–40.

Keeping those standards in mind, we now turn to the plaintiff's claims that the court improperly dismissed its appeal.

## PLAINTIFF'S CLAIMS

On appeal to the trial court, the plaintiff claimed that the commission acted arbitrarily, illegally and in abuse of its discretion. Here, the plaintiff claims that the court improperly dismissed its appeal by concluding that the commission justifiably denied the plaintiff's application for a special exception on the basis of (1) an appraiser's opinion that houses of worship are inappropriate in residential zones because they cause property values to decline, (2) certain design features of the proposed house of worship that are out of character with the neighborhood, (3) property owners' concerns for public safety and (4) the personal knowledge of the members of the commission regarding traffic safety and congestion. We agree with the plaintiff.

"The terms special permit and special exception have the same legal import and can be used interchangeably. . . . A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience, and property values. . . . Acting in this administrative capacity, the [zoning commission's] function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied." (Internal quotation marks omitted.) *Mobil Oil Corp.* v. *Zoning Commission,* 30 Conn. App. 816, 819, 622 A.2d 1035 (1993). "When, on a zoning appeal, it appears that as a matter of law there was but a single conclusion which the zoning authority could reasonably reach, the court may direct the administrative agency to do or to refrain from doing what the conclusion legally requires." (Internal quotation marks omitted.) Id., 820.

In its memorandum of decision, the trial court cited the Morris zoning regulations applicable to the plaintiff's request for a special exception: "The purpose of the Morris zoning regulations, as set forth in § 1, is to guide the growth and development of the [t]own and promote beneficial and convenient relationships among residential, agricultural, commercial, industrial and public areas within the [t]own. In addition, these zoning regulations are designed to achieve the following more particularly described purposes . . . 3. to provide for the safe and convenient circulation of traffic throughout the town and to avoid traffic congestion . . . 5. to protect and conserve the existing and planned character of all parts of the town, and thereby aid in maintaining property stability and value, and to encourage the orderly development of all parts of the town . . . 7. to minimize conflicts among uses of land and buildings and to bring about the gradual conformity of uses of land and buildings with the comprehensive plan herein set forth. . . ."

"Section 52 of the Morris zoning regulations, entitled Special Exceptions, provides: '*Purpose*: Uses permitted as Special Exception uses subject to the approval of the Commission are deemed to be permitted uses in their respective districts, subject to the satisfaction of the requirements and standards of this Section. Special Exception uses that may be permitted in a District are unusual uses that under favorable circumstances will be appropriate, harmonious and desirable uses in the District but that possess such special characteristics that each use should be considered as an individual case.' " (Emphasis in original.)

Section 52 also provides: "*General Standards*: The proposed use and the proposed buildings and structures shall conform to the following General Standards: 1. *Character*: The location, type, character and extent of the use and of any building or other structure in connec-

tion therewith shall be in harmony with and conform to the appropriate and orderly development of the Town and the neighborhood and shall not hinder or discourage the appropriate development and use of adjacent property or impair the value thereof. . . . 5. *Neighborhood*: The Site Plan and architectural plans shall be of a character as to harmonize with the neighborhood, to accomplish a transition in character between areas of unlike character, to protect property values and to preserve and enhance the appearance and beauty of the community."[18] (Emphasis in original.)

Before addressing the plaintiff's specific claims, we turn to an issue that is salient to the regulations, the commission's decision and the plaintiff's claims, namely, what does the term "neighborhood" mean. The town's zoning regulations require that the commission consider the neighborhood, a general standard, when deliberating with respect to a special permit. See Morris Zoning Regs., § 52-5. As we set forth in the facts, the chairwoman of the commission had a lengthy colloquy with the attorneys about the definition or meaning of neighborhood. No one has cited to a definition of the word neighborhood in the town's zoning regulations, and we find none. Clearly, the people who live along and in the area of West Morris Road consider themselves neighbors, even if they live quite a few miles distant from one another due the area's rural character.[19] The question comes to mind whether rural and neighbor-

---

[18] Section 52 of the Morris zoning regulations also contains a subsection entitled "Special Standards," which provides in relevant part: "The proposed use and the proposed buildings and structures shall also conform to the following Special Standards." On the basis of our review of that section, we find that there are no special standards applicable to churches.

[19] Webster's Third New International Dictionary defines neighbor as "one whose house or other place of residence immediately adjoins or is relatively near that of another: one that lives next to or near another . . . ."

Neighborhood is defined as "the quality or state of being immediately adjacent or relatively near to something . . . ." Id.

hood have opposite meanings. It is apparent from the comments of individuals who spoke in opposition to the plaintiff's application that they enjoy the distance between their homes and relative isolation.

"A zoning ordinance is a local legislative enactment, and in its interpretation the question is the intention of the legislative body as found from the words employed in the ordinance. . . . The words employed are to be interpreted in their natural and usual meaning. . . . The language of the ordinance is construed so that no clause or provision is considered superfluous, void or insignificant. . . . The regulations must be construed as a whole and in such a way as to reconcile all their provisions as far as possible. . . . [R]egulations are to be construed as a whole since particular words or sections of the regulations, considered separately, may be lacking in precision of meaning to afford a standard sufficient to sustain them." (Citations omitted; internal quotation marks omitted.) *Connecticut Resource Recovery Authority* v. *Planning & Zoning Commission*, 46 Conn. App. 566, 571, 700 A.2d 67, cert. denied, 243 Conn. 935, 702 A.2d 640 (1997). The regulation at hand clearly permits houses of worship as special uses within the R-60 residential zone.

We conclude that the legislative body clearly intended that houses of worship may be approved and woven into the fabric of a residential neighborhood. To conclude otherwise would render the regulations self-contradictory. "The designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district. *Beit Havurah* v. *Zoning Board of Appeals*, [supra, 177 Conn. 443]." *TLC Development, Inc.* v. *Planning & Zoning Commission*, 215 Conn. 527, 532–33, 577 A.2d 288 (1990). Such a conclusive

presumption does not, however, dictate that the commission must, in every case, grant a special use application. The town's regulations with regard to special exceptions provide that the commission consider the effect a special exception will have on a neighborhood when exercising its discretion in considering an application for a special exception.

I

The plaintiff claims that the court improperly dismissed its appeal by concluding that the commission was justified in denying its application for a special exception because a house of worship in a residential zone may and will cause property values to diminish. We conclude that the record does not contain substantial evidence to support the commission's decision.[20]

We first recognize that the town's zoning regulations at least twice mention property values and that the commission shall consider the diminution, if any, of the property values in the area when deciding an application for a special exception. See Morris Zoning Regs., §§ 1 and 52. The return of record demonstrates that the commission heard evidence concerning the value of neighboring property at the public hearing and received a written opinion from Oles.

We have reviewed the entire record, including the transcript of the hearing, and conclude that the evidence is not substantial because it not supported by anything other than speculation, fear and conjecture on the part of those objecting to the special exception. Indeed, at the conclusion of the hearing, the chairwoman of the commission commented on her understanding of the testimony of both real estate appraisers that neither had based their opinions on comparable

---

[20] The plaintiff's claim addresses the commission's first reason to deny the plaintiff's application for a special exception.

situations and could not offer an opinion as to whether values will be affected.

"When considering an application for a special exception, a zoning authority acts in an administrative capacity, and its function is to determine whether the proposed use is expressly permitted under the regulations, and whether the standards set for in the regulations and statutes are satisfied." *Daughters of St. Paul, Inc.* v. *Zoning Board of* Appeals, 17 Conn. App. 53, 56, 549 A.2d 1076 (1988). There is no substantial evidence in Oles' letter or testimony specific to this case that the plaintiff's proposed house of worship will cause the value of the surrounding property to decline. Much of Oles' opinion is couched in the guise of legal opinion, going so far, in fact, as to state that churches have no place in residential communities because they cause property values to decline, but not just because they are houses of worship. In his opinion, anything that is not a single-family residence will diminish property values on West Morris Road. Oles' opinion constitutes a market analysis of real property values in general, not the effect the plaintiff's house of worship will have on the property along West Morris Road. Furthermore, Oles is not in a position to determine whether churches should be built in residential neighborhoods. In Morris, the zoning regulations provide that churches may be situated only in residential zones.

In the absence of specific facts relating to a particular application, to deny the plaintiff a special exception because a house of worship per se devalues property in a residential neighborhood is contrary to the zoning regulations themselves, which permit houses of worship to be located in residential areas only. "Common sense must be used in interpreting a zoning regulation, because it is assumed that the zoning authority intended to accomplish a reasonable and rational result. See *Hall* v. *Planning Board*, 2 Conn. App. 49, 52, 475 A.2d 1114

[cert. granted, 194 Conn. 805, 482 A.2d 710 (1984) (appeal dismissed March 5, 1985)]." *Daughters of St. Paul, Inc.* v. *Zoning Board of Appeals*, supra, 17 Conn. App. 66–67.

Where regulations permit the use here, a conclusive presumption arises that the use per se cannot adversely affect the zone in which it is to be conducted. See *TLC Development, Inc.* v. *Planning & Zoning Commission*, supra, 215 Conn. 532–33; see also *Whisper Wind Development Corp.* v. *Planning & Zoning Commission*, 32 Conn. App. 515, 525–30, 630 A.2d 108 (1993) (*Dupont, C. J.*, dissenting), aff'd, 229 Conn. 176, 640 A.2d 100 (1994). "A special permit may be denied only for failure to meet specific standards in the regulations, and not for vague or general reasons. See *DeMaria* v. *Planning & Zoning Commission*, 159 Conn. 534, 541, 271 A.2d 105 (1970); accord *Kosinski* v. *Lawlor*, 177 Conn. 420, 423, 418 A.2d 66 (1979) (site plan). This is especially important because . . . [t]he zoning commission has no discretion to deny the special exception if the regulations and statutes are satisfied. *Felsman* v. *Zoning Commission*, 31 Conn. App. 674, 678, 626 A.2d 825 (1993)." (Internal quotation marks omitted.) *Whisper Wind Development Corp.* v. *Planning & Zoning Commission*, supra, 526 (*Dupont, C. J.*, dissenting).

We conclude that the commission's decision to deny the plaintiff's application for a special exception on the basis of diminished residential property values was arbitrary, illegal and an abuse of discretion because it was not supported by substantial evidence in the record that the permitted use would unduly affect the value of property in the neighborhood.

II

The plaintiff's second claim is that the court improperly dismissed its appeal because certain design features of the proposed house of worship are out of

character and not in harmony with the neighborhood.[21] The record lacks substantial evidence to support the court's conclusion, and, in fact, is quite to the contrary.

"If a special permit application conforms with the standards the statutes and the agency's existing regulations, it must be approved. . . . The commission cannot require the applicant to meet conditions not contained in the regulations themselves. . . . A special permit can be denied only for failure to meet specific standards in the regulations, and not for vague, general reasons." (Citations omitted.) *Grace Community Church* v. *Planning & Zoning Commission*, 42 Conn. Sup. 256, 262, 615 A.2d 1092 (1992), aff'd sub nom. *Grace Community Church* v. *Bethel*, 30 Conn. App. 765, 622 A.2d 591, cert. denied, 226 Conn. 903, 625 A.2d 1375, cert. denied, 510 U.S. 944, 114 S. Ct. 383, 126 L. Ed. 2d 332 (1993). "[T]he application of zoning regulations to restrict religious uses raises concern over the possible infringement of the constitutional rights guaranteed by the free exercise of religion clauses. The courts have been reluctant to uphold the strict enforcement, against religious uses, of regulations that require special exception uses, to be in architectural harmony with the surrounding neighborhood. 2 R. Anderson, American Law of Zoning (3d Ed. [1986]) § 12.27. The possibility of discriminatory abuse of such regulations is obvious." *Daughters of St. Paul, Inc.* v. *Zoning Board of Appeals*, supra, 17 Conn. App. 67.

The record before the commission indicates that the houses along West Morris Road range in age from ten years to 150 years. The photographic evidence in the record depicts homes constructed of wood or aluminum in colonial, cape, ranch or modern design. The record also contains photographs of other structures in the area, including a weathered barn, an older aluminum house trailer covered with a blue tarp and a two story,

---

[21] The plaintiff's claim relates to the fifth and sixth reasons given by the commission for denying the plaintiff a special exception.

prefabricated commercial building surrounded by trucks and heavy equipment.

If the zoning regulations permit a special exception such as a house of worship, the commission must make some reasonable accommodation for the design to meet the needs of the activities taking place therein. It is without question that zoning boards and commissions may impose reasonable restrictions on special exceptions, including houses of worship, for health and safety purposes and to prevent a nuisance. See *Beit Havurah* v. *Zoning Board of Appeal*, supra, 177 Conn. 443; *St. John's Roman Catholic Church Corp.* v. *Darien*, 149 Conn. 712, 720, 184 A.2d 42 (1962); *Grace Community Church* v. *Planning & Zoning Commission*, supra, 42 Conn. Sup. 275. Although the Morris zoning regulations impose special standards on some special exceptions permitted in residential zones, we think it significant that there are no special standards that apply to houses of worship. See Morris Zoning Regs., § 52.

The essence of the opponents' objection to the plaintiff's proposed house of worship is that it has two sets of double doors, a doublewide driveway, a parking lot for fifty vehicles, down-facing security lights on each side of the doorways and to the rear of the building, and a security light to illuminate the driveway. To the untrained eye, there is slight difference between the design of the proposed house of worship and the more modern existing houses depicted in the photographs. The design is not stereotypical of a white church on a New England green. There is no steeple or bell tower. There are no stained glass windows.

The double doors used in the design of the plaintiff's meetinghouse have something of an institutional appearance, as one might see in a school, for instance. They, however, will not be seen from the road. Their design is consistent nonetheless with the purpose of the structure where a wider entry may be needed for handicapped access or where a bride may stand with

her father before walking down the aisle. There was testimony from one of the plaintiff's members that should the plaintiff ever move from the premises, the doors could be replaced with something more residential in character. If the commission is concerned about the lights, it may certainly impose reasonable restrictions, such as a time and duration of illumination, on the special exception. Indeed, counsel for the plaintiff informed the commission that the plaintiff would be willing to submit to reasonable conditions the commission might impose in granting the special exception.

As to the question of a parking lot, the regulations themselves require a parking space for every five seats in the building. See footnote 8. As we have explained, the commission may not deny an application for a special exception on the basis of a general objection to what the regulations themselves require, particularly when the application conforms to the regulations. A general dislike is not a sufficient basis to deny the application.

There also is no substantial evidence to support the fears, speculation and concern voiced by opponents of the special exception with regard to noise at midday on Sundays and on Wednesday evenings. In fact, there is no evidence of the noise the opponents expect to emanate from the plaintiff's house of worship or property. As noted, there is no bell tower depicted on the proposed structure. As to the Oles assertion that there is no transition from the residential portion of West Morris Road to the plaintiff's house of worship, that assertion overlooks the commercial establishments adjacent to the plaintiff's property.

For those reasons, we conclude that there was no substantial evidence in the record to support the commission's conclusion that the proposed house of worship would not be in harmony with the neighborhood. The commission therefore acted arbitrarily, illegally

and in abuse of its discretion in denying the plaintiff's application, and the court improperly upheld the decision.

## III

We will address the plaintiff's third and fourth claims together because they are interrelated. Specifically, the plaintiff claims that the court improperly dismissed its appeal after concluding that the commission's decision was justified in light of the property owners' concern for public safety and the personal knowledge of the commission members with respect to traffic safety and congestion.[22] We agree with the plaintiff.

One of the purposes of the town's zoning regulations is "to provide for the safe and convenient circulation of traffic throughout the town and to avoid traffic congestion . . . ." Morris Zoning Regs., § 1. The court concluded that the "record reasonably supports the commission's denial of the special exception application based on the traffic study and the commission's personal knowledge of the road, considering the grade and curves of the road and the inclement weather driving conditions on the road."

Although it is a well known legal principle that an administrative agency is not required to believe any witness, including an expert; *Manor Development Corp.* v. *Conservation Commission,* 180 Conn. 692, 697, 433 A.2d 999 (1980); *Laufer* v. *Conservation Commission,* 24 Conn. App. 708, 716, 592 A.2d 392 (1991); the agency may not misrepresent expert testimony and evidence to justify its conclusion. In this case, without question, neither the plaintiff's traffic expert nor the independent expert retained to review the plaintiff's traffic study concluded that the increased traffic generated by the

---

[22] The plaintiff's claims address the second and third reasons given by the commission to deny the special exception.

plaintiff's proposed use of the land on West Morris Road would create a hazardous situation. Both experts concluded that the proposed house of worship would have a minimal effect on traffic safety and operations on the surrounding roadways. We therefore conclude that the traffic study reason proffered by the commission to deny the special exception is without substantial evidence in the record.

That leaves us to determine whether the commission's articulated reasons of personal knowledge of the conditions on West Morris Road and the public safety concerns voiced by the local residents find substantial support in the record. We think that they do not.

"Facts supporting the agency's decision also include knowledge acquired by commission members through personal observation of the site, or through personal knowledge of the area involved in the application." *Grace Community Church* v. *Planning & Zoning Commission,* supra, 42 Conn. Sup. 263. General Statutes § 8-2 (a), the zoning enabling statute, provides in relevant part that zoning regulations "shall be designed to lessen congestion in the streets; to secure safety . . . to promote health and the general welfare . . . ."

Accordingly, the consideration that applies to zoning applications is not the overall volume of traffic, but whether the increase in traffic will cause congestion. *Lathrop* v. *Planning & Zoning Commission,* 164 Conn. 215, 222, 319 A.2d 376 (1973); see also *Daughters of St. Paul, Inc.* v. *Zoning Board of Appeals,* supra, 17 Conn. App. 69. In addition, a land use agency cannot deny an application for a permitted use because of off-site traffic considerations. *TLC Development, Inc.* v. *Planning & Zoning Commission,* supra, 215 Conn. 532–33 (site plan); *Sowin Associates* v. *Planning & Zoning Commission,* 23 Conn. App. 370, 374, 375, 580 A.2d 91 (subdivision), cert. denied, 216 Conn. 832, 583 A.2d 131 (1990).

Section 52 of the Morris zoning regulations provides under the general standards subpart: "3. *Access*: Provision shall be made for vehicular access to the lot in such a manner as to avoid undue hazards to traffic or pedestrians and undue traffic congestion on any street. . . ." (Emphasis in original.) "Undue hazards to traffic" we conclude is a general and imprecise term. "Administrative regulations must have adequate, fixed and sufficient standards to guide the agency in their application to avoid decisions that allow the agency to interpret the regulations in more than one manner and to apply them arbitrarily." *Grace Community Church* v. *Planning & Zoning Commission*, supra, 42 Conn. Sup. 269.

"A zoning authority may act upon facts known to it even though those facts are not offered in evidence at the hearing . . . and the reasons given by a zoning authority, presumably composed of lay persons, to justify its action need not be in a form to satisfy the meticulous criterion of a legal expert. . . . Nonetheless, this court can review the reasonableness of the [commission's] finding . . . by determining whether the reasons given are supported by the record and are pertinent to the decision." (Citations omitted.) *Daughters of St. Paul, Inc.* v. *Zoning Board of Appeals*, supra, 17 Conn. App. 68.

The commission denied the application for a special permit with respect to traffic citing the grade and curves in West Morris Road and driving conditions during inclement weather. First, with respect to the condition of the road during inclement weather, the town has a duty to maintain its roads and may not deny access to them for its failure to maintain the roadway. Id. As to the sight lines north and south of the driveway into the plaintiff's property, the evidence in the record demonstrates that the proposed sight lines exceed the minimum needed by almost 200 feet on the north side and more than 300 feet to the south. The only evidence

of danger to vehicles and persons was a one vehicle accident caused by a drunken driver whose vehicle struck a stone wall, not the condition of the road or sight lines. The general standards and the generalized reason stated by the commission cannot substitute for the specificity required by our case law. See *Ghent* v. *Planning Commission*, 219 Conn. 511, 517, 594 A.2d 5 (1991); *Sonn* v. *Planning Commission*, 172 Conn. 156, 162, 374 A.2d 159 (1976).

The public testified as to an incline and a curve in West Morris Road, a nineteen foot wide bridge, a roadbed that varies in width from twenty-one to twenty-seven feet. They also testified that people regularly and in significant numbers safely walk and jog and ride bicycles and horses along the road on a daily basis, and that they safely share the road with eighteen wheel trucks going to and from the gravel pits. The gravel trucks, we conclude, are a pretext for claiming a dangerous situation, as the record does not reveal that the trucks operate on Wednesday evenings or midday on Sundays. Furthermore, the comments of residents regarding the dangers of twenty additional trips on Wednesday evening and fifty trips on Sunday, under the worst case scenario, are based on speculation and do not rise to the level of substantial evidence that we apply to special exception applications.

We conclude that in denying the special exception, the commission construed the special exception regulations beyond the fair import of their language and, thus, acted in an arbitrary and illegal manner, and that the court improperly dismissed the plaintiff's appeal. See *Quality Sand & Gravel, Inc.* v. *Planning & Zoning Commission*, supra, 55 Conn. App. 537–39.

The judgment is reversed and the case is remanded with direction to remand the case to the planning and

zoning commission for further proceedings consistent with this opinion.

In this opinion the other judges concurred.