FIELD POINT PARK ASSOCIATION, INC., ET AL. *v.*
PLANNING AND ZONING COMMISSION OF THE
TOWN OF GREENWICH ET AL.
(AC 27231)

Flynn, C. J., and DiPentima and Hennessy, Js.

Argued February 5—officially released August 28, 2007

*Andrew J. McDonald,* with whom was *Charles K. Campbell, Jr.,* for the appellants (plaintiffs).

*John P. Tesei,* with whom was *Christopher D. Bristol,* for the appellee (defendant JSM Partners, LLC).

*Opinion*

FLYNN, C. J. The plaintiffs, Field Point Park Association, Inc., Phillip B. Korsant, Catherine N. Korsant and Carl N. Graf, appeal from the judgment of the trial court dismissing their appeal from a decision of the defendant planning and zoning commission of the town of Greenwich (commission), approving the application for a coastal site plan for demolition of an existing structure and construction of a single-family house on lot B of 110 Field Point Circle in Greenwich (property) filed by the defendant JSM Partners, LLC (applicant). On appeal, the plaintiffs claim that the court improperly determined that the Greenwich building zone regulations (regulations) permit a portion of the area beneath Field Point Circle, a private road, owned in fee simple by the applicant, to be included for purposes of calculating the size of lot B. We reverse the judgment of the trial court.

The following facts are not in dispute. On November 15, 2002, the applicant submitted a coastal site plan application to the commission to permit the demolition of an existing home and the construction of a new single-family dwelling, a swimming pool and related structures on lot B, 110 Field Point Circle. Lot B consisted of 2.034 acres, but 0.114 of an acre is located under a portion of a private roadway, Field Point Circle, which serves the neighborhood. The commission conducted a series of public hearings on the application from January 7 through June 10, 2003. On the basis of

the commission's interpretation of the regulations, the applicant met the two acre minimum lot size requirement for residential building lots in the RA-2 zone, the zone in which lot B is located, and the commission approved the application. Specifically, the commission interpreted the regulations to allow the applicant to include that portion of land, owned by the applicant in fee simple, which contains the right-of-way that serves as a portion of Field Point Circle, in calculating the size of lot B. Lot B meets the two acre requirement only if the area containing the right-of-way is included in the lot size calculation; without the inclusion of this area, lot B is only 1.92 acres.

The plaintiffs appealed from the commission's decision to the Superior Court, and the appeal was tried to the court, *Wilson, J.*, on April 18, 2005. The court, after conducting a plenary review of the regulations at issue, agreed with the commission's interpretation that the regulations permit the applicant to include the land it owned, located beneath a portion of Field Point Circle, in its calculation of the size of lot B, and it dismissed the plaintiffs' appeal. The plaintiffs filed a petition for certification to appeal to this court, which we granted, and this appeal followed.

On appeal, the plaintiffs claim that the commission and the court improperly interpreted the regulations to permit the applicant to include land it owns in fee simple, located under a private roadway, for purposes of calculating the size of lot B.[1]

Resolution of this issue requires us to review and analyze the relevant town zoning regulations. "Because

---

[1] The plaintiffs place much emphasis on *Bankers Trust Co.* v. *Zoning Board of Appeals*, 165 Conn. 624, 345 A.2d 544 (1974), a case in which the Supreme Court determined that an area of land, split into two separate parcels by a roadway going completely through it from north to south, could not be considered one lot for building purposes. Despite the arguments of the plaintiffs, we do not consider *Bankers Trust Co.* particularly helpful to our analysis of the Greenwich regulations.

the interpretation of the regulations presents a question of law, our review is plenary. . . . Additionally, zoning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes." (Internal quotation marks omitted.) *Alvord Investments, LLC* v. *Zoning Board of Appeals*, 282 Conn. 393, 416, 920 A.2d 1000 (2007). "Ordinarily, [appellate courts afford] deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when [an] agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law." (Internal quotation marks omitted.) *Wood* v. *Zoning Board of Appeals*, 258 Conn. 691, 698–99, 784 A.2d 354 (2001).

Regulations must be viewed to form a cohesive body of law, and they "must be construed as a whole and in such a way as to reconcile all their provisions as far as possible." (Internal quotation marks omitted.) *Bethlehem Christian Fellowship, Inc.* v. *Planning & Zoning Commission*, 73 Conn. App. 442, 462, 807 A.2d 1089, cert. denied, 262 Conn. 928, 814 A.2d 379 (2002). This is true because "particular words or sections of the regulations, considered separately, may be lacking in precision of meaning to afford a standard sufficient to sustain them." (Internal quotation marks omitted.) Id. "When more than one construction is possible, we adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable

or bizarre results." (Internal quotation marks omitted.) *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 657, 894 A.2d 285 (2006); see *Red Hill Coalition, Inc.* v. *Town Plan & Zoning Commission*, 212 Conn. 727, 737–38, 563 A.2d 1347 (1989). "[W]e consider the statute as a whole with a view toward reconciling its parts in order to obtain a sensible and rational overall interpretation." (Internal quotation marks omitted.) *Fruin* v. *Colonnade One at Old Greenwich Ltd. Partnership*, 237 Conn. 123, 130, 676 A.2d 369 (1996). With these standards as a guide, we commence our review.

The determination of whether the area beneath Field Point Circle may be included in the area calculations of lot B depends on the proper construction to be given to the relevant portions of the regulations, read in the context of all of the regulations, their evident purpose and policy, and recognized principles of zoning in general. See *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 26–27, 717 A.2d 77 (1998).

First, we look to the definition of "lot" contained in the regulations. A "lot" is defined in relevant part as "a parcel of land occupied or to be occupied by a building or a group of buildings and their accessory uses, including such open spaces as are required by these regulations and such other open spaces as are used in connection with the buildings." Greenwich Building Zone Regs., § 6-5 (33). The question here then becomes whether the portion of Field Point Circle that runs over the applicant's land properly can be considered part of the applicant's lot when assessing whether the lot meets the minimum lot size for building purposes.

Clearly, the area beneath Field Point Circle could not be covered by that portion of the definition of lot defining it as "being occupied or to be occupied by a building or group of buildings . . . ." Id. Although it is

possible to construct and raise a building over a street in such a manner that passage by vehicular and pedestrian traffic is possible, we are guided by that rubric of statutory construction that the legislative body is presumed to have intended a sensible result. "When two constructions are possible, courts will adopt the one which makes the [statute] effective and workable, and not one that leads to difficult and possibly bizarre results." (Internal quotation marks omitted.) *Red Hill Coalition, Inc.* v. *Town Plan & Zoning Commission*, supra, 212 Conn. 737–38. Lot B is located in a residential zone, denominated RA-2, which requires that any buildings be set back from the roadway with a minimum front yard of at least seventy-five feet. Greenwich Building Zone Regs., § 6-205. That requirement could not be satisfied by a building located in whole or in part over the roadway. We therefore conclude that viewing the zoning ordinance as a whole, the private roadway could not satisfy the portion of the definition defining a lot as a land parcel occupied or to be occupied by a building.

The applicant argues that the area beneath the roadway area properly could be considered an accessory use or open space under the regulations. The plaintiffs cite to several decisions in other jurisdictions and argue that every other jurisdiction having considered this issue has held that land beneath a private roadway, which is held in fee simple by the applicant, cannot be considered an accessory use or open space. Having reviewed the decisions cited by the plaintiffs, as well as other decisions, we find them unpersuasive in that they contain little or no analysis as to why such areas could not be considered accessory uses under particular ordinances or the ordinances do not contain an "accessory use" provision. Compare id., § 6-5 (33) (defining lot in relevant part as "a parcel of land occupied or to be occupied by a building or a group of buildings and their *accessory uses*" [emphasis added])

with the ordinance cited in *Loveladies Property Owners Assn., Inc.* v. *Barnegat City Service Co.*, 60 N.J. Super. 491, 498, 159 A.2d 417 (App. Div.) (defining lot in relevant part as "[a] parcel of land on which a main building and its *accessory buildings* are or may be placed" [emphasis added; internal quotation marks omitted]), cert. denied, 33 N.J. 118, 162 A.2d 342 (1960). Additionally, other cases that we have reviewed, which hold that the area beneath private roadways cannot be considered "open space" simply because it contains impervious pavement, also are unpersuasive. See, e.g., *Board of County Commissioners* v. *Aurora*, 62 P.3d 1049, 1052–53 (Colo. App. 2002) (holding that roadway, improved by grading and surfacing, could not be "open space"). This is so because one of the required areas of open space in the Greenwich regulations is the "front yard." See Greenwich Building Zone Regs., §§ 6-5 (54), 6-203 (b) and 6-205. The "front yard" area, although specifically defined as an area of "open space" under the regulations, also is an area that may contain impervious pavement in the form of driveways and walkways. Accordingly, under the Greenwich regulations, impervious pavement alone cannot be the deciding factor in whether an area is "open space."

We also note that our Supreme Court in *Morgenbesser* v. *Aquarion Water Co.*, 276 Conn. 825, 888 A.2d 1078 (2006), a case concerning a restrictive covenant that only permitted uses that were accessory to or incidental to the primary use of the property for water supply, specifically stated that "[t]he construction of a road . . . is not a water supply use in and of itself, but might contribute to the use of the property for that purpose and, therefore, *could be an accessory use.*" (Emphasis added.) Id., 832. Accordingly, the cases cited by the plaintiffs provide no assistance to our analysis of the Greenwich regulations.

In conducting a comprehensive review of the Greenwich regulations, however, we are convinced that the area beneath Field Point Circle cannot be considered part of the applicant's lot when determining minimum lot size. We continue our examination of the regulations at issue in this case, with § 6-5 (46), which leads us to conclude that Field Point Circle is a "street." Section 6-5 (46) defines the term "street" to "mean and include all public and private streets, highways, avenues, boulevards, parkways, roads and other similar ways." Greenwich Building Zone Regs., § 6-5 (46). The plain language of § 6-5 (46) defining "street" would encompass that portion of land under Field Point Circle owned in fee simple by the applicant because it is a portion of a private street or "other similar [way]."

Under the Greenwich regulations, a "front yard" is defined as "an open space across the full width of the lot between the front wall of the principal building and the front lot line." Id., § 6-5 (54). Section 6-203 (b) of the regulations provides: "The required minimum front yard depths and street side yard widths are based on streets at least fifty (50) feet wide. For every foot less in width of a street, the required depths and widths of front yards and street side yards, respectively, are to be increased six (6) inches." Id., § 6-203 (b). The regulations define "lot frontage" as "the distance between the side lines of a lot measured along the street which distance continues undiminished to a depth equivalent to at least the front yard setback requirement of the zone. Where the front lot line is along the circular terminus of a cul-de-sac, the distance may be measured along the required setback line parallel to the street line." Id., § 6-5 (35). Reviewing these regulations in conjunction with the regulatory definition of "lot," the only reasonable conclusion is that the regulations would not allow

the area beneath a roadway to be considered part of the lot for purposes of lot size calculation.

In the RA-2 zone, for example, the regulations mandate that the front yard have a minimum depth of seventy-five feet. Id., § 6-205. Where the adjoining street is less than the required fifty feet in width, however, the regulations require that the front yard depth be increased by six inches for every foot lacking from the fifty foot street width. See id., § 6-203 (b). Accordingly, if an applicant's lot is located on a street that is thirty feet wide, its required front yard depth is not seventy-five feet from the street, but, rather, it is eighty-five feet from the street. It seems incongruous, then, to allow the actual land beneath the street to be included in calculating lot size when it specifically is excluded in calculating front yard depth.

We also are drawn to § 6-131 and diagram 7.1 of the regulations. Section 6-131 (a) provides in relevant part that a rear lot may be improved provided: "(1) Such lot has access to a street by means of an unobstructed access way held in the same fee simple ownership as the rear lot; (2) That such access way shall be [twenty] feet wide . . . (3) Within the lines of such access way there shall be constructed a graveled or other paved way at least [twelve] feet wide . . . (5) The area of access way is excluded from lot area calculation for lot size and [floor area ratio] . . . (7) Such access way shall not be included for the purpose of meeting the area required by [§] 6-205 of the rear lot." Id., § 6-131 (a). Diagram 7.1 depicts a rear lot in the shape of a flag with a pole, having a twenty foot wide accessway, and specifically states: "The area of accessway is excluded from lot area calculation for lot size . . . ." Id., diagram 7.1. Reading the regulations to form a cohesive body of law, as we must; see *Bethlehem Christian Fellow-*

*ship, Inc.* v. *Planning & Zoning Commission,* supra, 73 Conn. App. 462; we, again, find it incongruous that the regulations specifically would prohibit a rear lot owner, who has a fee interest in a private accessway that serves only the rear lot, from including the area of such accessway in its lot size calculation, but, on the other hand, would allow a front lot owner to include a private roadway, which serves an entire neighborhood, in its lot size calculation. Such a construction simply does not comport with our reading of the regulations in their entirety.

Mindful that in interpreting regulations, we must "reconcile their provisions and make them operative so far as possible"; (internal quotation marks omitted) *Graff* v. *Zoning Board of Appeals,* supra, 277 Conn. 657; we have adopted a construction that renders the regulations effective, consistent and workable and have rejected the reading proposed by the applicant and the board that, we conclude, would lead to inconsistent, unreasonable or bizarre results. See id. We conclude that the area beneath Field Point Circle does not fit within the definition of "lot" contained in the Greenwich building zone regulations.

The judgment is reversed and the case is remanded with direction to sustain the plaintiffs' appeal.

In this opinion the other judges concurred.