SOUTHBURY LAND TRUST, INC., ET AL. *v.* WILLIAM
ANDRICOVICH ET AL.
(AC 19635)

Foti, Spear and Mihalakos, Js.

Argued June 7—officially released September 12, 2000

*Neil R. Marcus*, for the appellant (named plaintiff).

*Martin A. Rader, Jr.*, with whom was *John H. Van Lenten*, for the appellees (defendants).

*Opinion*

FOTI, J. This case concerns the construction of a conservation covenant that was executed in favor of the plaintiff Southbury Land Trust, Inc.,[1] in connection with a rezoning of a parcel of land now owned by the defendants, William Andricovich and Sabina Andricovich. The plaintiff appeals from the trial court's judgment interpreting the conservation covenant to allow the construction of a single-family home on the defendants' land. The plaintiff claims that (1) the court improperly concluded that the covenant permits the proposed construction of a detached single-family dwelling on the subject parcel and (2) even if the court properly concluded that the covenant permits the construction of a detached single-family home, the location of the proposed construction would constitute a violation of the covenant. We affirm the judgment of the trial court.

---

[1] The defendants' motion to dismiss the action as to the plaintiff Carolyn K. Longstreth was granted, and, therefore, we refer in this opinion to the named plaintiff as the plaintiff.

The following facts are relevant to this appeal. The defendants own an approximately nine acre farm in Southbury. This parcel of land is also known as "parcel C" of planned development district number five (district). An amendment to the zoning regulations of the town of Southbury, which went into effect in November, 1983, created the district as part of a land development deal.

The amendment required that as part of the approval process for the development project, the owner of parcel C execute a conservation easement[2] that would perpetually restrict the use of parcel C to those uses set out in sections 4.1.1 through 4.1.7 of the amendment. Thereafter, the owners[3] of parcel C executed a conservation easement that, among other things, adopted almost verbatim the restrictions set forth in sections 4.1.2 and 4.1.3 of the amendment. Section two of the conservation easement, the interpretation of which is the subject of this appeal, provides in relevant part: "[T]o restrict Parcel C to its agricultural and open space use, within Parcel C land, buildings and other structures shall be used for the following purposes and no other:

"(a) Farms, truck gardens, forestry and keeping of livestock and poultry.

"(b) *A single detached dwelling for one (1) family and not more than (1) such dwelling per lot, except as provided in subparagraph c below.*

"(c) *An additional dwelling unit for one family in a dwelling or another building, provided that the same*

---

[2] The conservation easement was to be a conservation restriction within the meaning of General Statutes § 47-42a (a), which defines a conservation restriction as "a limitation, whether or not stated in the form of a restriction, easement, covenant or condition, in any deed, will or other instrument executed by or on behalf of the owner of the land described therein or in any order of taking such land whose purpose is to retain land or water areas predominantly in their natural, scenic or open condition or in agricultural, farming, forest or open space use."

[3] At the time the conservation easement was executed, the owners of the land approved as the district were Arthur Olsen and Cindy Olsen.

*is used only as a residence for one or more members of the family of persons directly employed in the operation of the uses in subparagraph a above on Parcel C of [the district]. . . ."* (Emphasis added.)

In the fall of 1998, the defendants obtained a zoning permit to construct on parcel C a detached[4] single-family home to be occupied by Sabina Andricovich's son and his family. The plaintiff, a nonprofit corporation dedicated to conserving natural areas in Southbury, brought this action, claiming that the construction of an additional single-family home would violate the terms of the conservation easement. The trial court found that the construction of a detached single-family dwelling was consistent with the exception set out in § 2 (c) of the conservation easement.

I

The plaintiff claims first that the court improperly concluded that the conservation easement permits the construction of a second detached single-family home on parcel C. We disagree with the plaintiff.

"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Southeastern Connecticut Regional Resources Recovery Authority* v. *Dept. of Public Utility Control,* 244 Conn. 280, 290, 709 A.2d 549 (1998). Because the conservation easement here contains definitive contract language, our review is plenary.

"Where the language of the contract is clear and unambiguous, the contract is to be given effect

---

[4] The term "detached" indicates that the home is to be constructed as a stand alone unit, not connected to any of the buildings already in existence on parcel C.

according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 498, 746 A.2d 1277 (2000). Although the words in a restrictive covenant are to be interpreted in their ordinary and popular sense, if any of the words have acquired a particular or special meaning in the particular relationship in which they appear, such particular or special meaning will control. *Katsoff* v. *Lucertini*, 141 Conn. 74, 77, 103 A.2d 812 (1954).

The words at issue here are found in the exception set forth in § 2 (c) of the conservation easement: "An additional *dwelling unit* for one family in a dwelling or another building, provided that the same is used [by a family member of those working on the farm]." (Emphasis added.) The plaintiff argues that the words "additional dwelling unit" as used in the easement mean a single-family apartment attached to or constructed within the existing farmhouse or another existing farm building. The defendants maintain that the language does not require that the "dwelling unit" be attached to an already existing structure, but allows for the construction of a detached single-family dwelling. We agree with the defendants.

As stated previously, the language from the conservation easement was taken directly from the amendment that created the district, which was incorporated into the zoning regulations of the town of Southbury. Southbury's town code defines dwelling unit: "A 'dwelling unit' is *a building or a part of a building* designed for occupancy, and so occupied, by one (1) family. . . ." (Emphasis added.)

The plaintiff argues, in effect, that we disregard the full definition of dwelling unit and find that a dwelling unit must be only "a part of a building" and not a detached, stand-alone "building." Recognizing that "[a] restrictive covenant must be narrowly construed and ought not to be extended by implication"; *5011 Community Organization* v. *Harris*, 16 Conn. App. 537, 541, 548 A.2d 9 (1988); we decline to adopt the plaintiff's narrow definition of "dwelling unit." Applying the definition found in the very code from which the language in the conservation easement derived, we conclude that the term "dwelling unit" applies to a detached, stand-alone building, such as a single-family home. The exception set forth in § 2 (c) of the conservation easement, therefore, clearly permits the defendants to construct a detached single-family home on parcel C.

We find further support for our conclusion in the absence of certain language from the easement. If the drafters had intended to restrict new construction such that any new dwelling unit would have to be built as part of an already existing structure, they easily could have accomplished this by adding certain language to the restriction. For instance, the exception in § 2 (c) could have stated that the additional dwelling unit for one family be "in an *existing* dwelling or another *existing* building." The language chosen by the drafters, however, does not require that any new dwelling unit be built as part of an existing building. On the basis of the language chosen by the drafters, we conclude that the drafters' intent was to allow the construction of a detached dwelling.

The plain language of § 2 (c) and (b) of the conservation easement clearly allows for the construction of a detached single-family home on parcel C, provided the other requirements of the restriction are met.[5] Accord-

---

[5] It is not disputed that the new home will be inhabited by family members of persons directly employed in the operation of the farm.

ingly, we decline to infer that any new dwelling unit constructed on parcel C must be attached to one of the already existing buildings.[6]

The plaintiff argues that by reading "dwelling unit" to include a detached single-family home, the exception set forth in § 2 (c) swallows the rule set out in § 2 (b) of the easement. We disagree with the plaintiff's argument and find that the general rule against new construction can logically coexist with the exception allowing new construction in limited circumstances.

Clearly, the drafters wanted to preserve the pastoral aspects of parcel C and sought to stave off future development of the land. The drafters recognized, however, that future generations farming parcel C might want to have their sons or daughters live with them on the farm, but in a separate dwelling unit. The drafters thus allowed for the construction of one more home on the land, but only on the condition that the inhabitants of that home be relatives of those working the farm. The drafters likely rationalized that by restricting ownership of any new home on parcel C to relatives of those farming the land the new inhabitants would have a greater connection to the land and would be more likely to take pains to preserve the pastoral setting of the land. The restrictions and exception set out in § 2 (b) and (c) go more to the use, rather than the design, of any structures built on the land. If the drafters had intended to control the physical design of any new structures on the land, they easily could have done so. The new home on parcel C will be inhabited by farmers and relatives of those farmers, and the construction of that home is consistent with § 2 of the conservation easement.

---

[6] The language in the easement here clearly allows for the construction of a detached home. We note, however, that even if the language were considered ambiguous, any doubt would be construed against the covenant. *5011 Community Organization* v. *Harris,* supra, 16 Conn. App. 541.

The plaintiff also argues that the court failed to consider the conservation easement as a whole and, therefore, failed to consider the drafters' intent. First, we note that there is nothing in the record to suggest that the court failed to consider the instrument as a whole.[7] Second, our own review of the conservation easement, in its entirety, leads us to conclude that the construction of a detached single-family home to be occupied by the relatives of working farmers is not, on its face,[8] inconsistent with the drafters' intent to preserve a working farm.

## II

The plaintiff claims next that the court improperly rejected its argument that even if a second house is permitted under the conservation easement, the proposed location of the house constituted a violation of the easement by obstructing visual access to, and the view of, parcel C. This claim was not addressed or decided by the trial court, and we, therefore, decline to review it. *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 52, 717 A.2d 77 (1998) ("because [appellate] review is limited to matters in the record, we will not address issues not decided by the trial court"); see also *Crest Pontiac*

---

[7] In fact, in its decision the court stated that "there are three principles of law to be employed by the court in construction [of a] restrictive covenant such as this one . . . . And the third rule of law is that the intent is to be based on a reading of the entire context of the language used, not just a single clause."

[8] Of course, we can imagine circumstances in which the construction of a single-family home on parcel C *would* violate the conservation agreement. If, for example, a very large, contemporary mansion that obscured the pastoral view of the farm was built in the middle of parcel C, then the spirit of the easement would clearly be undermined. The plaintiff most likely would be able to enjoin the construction of such a house on the ground that it would undermine the entire purpose of the easement. In and of itself, however, the construction of a single-family home on parcel C is not inconsistent with the overall intent of the easement and is permitted by § 2 (c).

*Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 444 n.10, 685 A.2d 670 (1996) (claims "neither addressed nor decided" by trial court are not properly before appellate tribunal).

It is the appellant's burden to provide an adequate record for review. It is, therefore, the responsibility of the appellant to move for an articulation of the record or to ask the trial judge to rule on an overlooked matter. *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, supra, 245 Conn. 53. The plaintiff did not file a motion for articulation,[9] and we decline to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] The plaintiff argues that although the court did not address this claim there is adequate evidence in the record for this court to conduct a de novo review of the claim. According to the plaintiff, by reading the language of the conservation easement and looking at a map of parcel C and the proposed construction this court can determine whether the proposed construction undermines the overall goal of the easement.

We disagree with the plaintiff. Whether the proposed construction will obstruct the view or undermine the pastoral nature of parcel C is a determination best made by the finder of fact. Such a determination might even require the fact finder to make a visual observation of the subject property. See, e.g., *Castonguay* v. *Plourde*, 46 Conn. App. 251, 262, 699 A.2d 226, cert. denied, 243 Conn. 931, 701 A.2d 660 (1997). Because the record is devoid of any such findings, this claim is ill suited for appellate review.