HENRY MORGENBESSER ET AL. *v.* AQUARION
WATER COMPANY OF CONNECTICUT ET AL.
(SC 17395)

Sullivan, C. J., and Norcott, Katz, Palmer and Zarella, Js.

Argued November 22, 2005—officially released January 24, 2006

*Thomas J. Donlon,* with whom was *Edward V.
O'Hanlan,* for the appellant (defendant Cellco Partnership).

*Jay H. Sandak,* for the appellees (plaintiffs).

*Opinion*

PER CURIAM. This appeal arises out of an action
brought by the plaintiffs,[1] individual owners of property
in the town of Greenwich (town), against the defendants, Aquarion Water Company of Connecticut (Aquarion) and Cellco Partnership, doing business as Verizon
Wireless (Verizon). The plaintiffs sought, inter alia, a
declaratory judgment and temporary and permanent

---

[1] The plaintiffs are Henry Morgenbesser, Karen Morgenbesser, Angela
O'Donnell, Michael O'Donnell, Howard Roitman and Lisa Roitman.

injunctions prohibiting the installation of telecommunications antenna panels and related improvements on a property located in the town at 20 Bowman Drive (property). The trial court rendered summary judgment for the plaintiffs on their action for a declaratory judgment and the plaintiffs withdrew their remaining claims. Verizon appeals from the judgment,[2] claiming that the trial court improperly interpreted the terms of a restrictive covenant governing the use of the property to prohibit the use of the property for this purpose. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. In February, 1952, King Merritt Acres, Inc., transferred the property, which was in a residential zone and was part of a subdivision known as King Merritt Acres, to the Greenwich Water Company. At the time of the transfer, the town's zoning regulations permitted certain nonresidential uses in residential zones. Specifically, the regulations provided for "[r]eservations for public water supply including land and improvements used for water supply purposes or purposes incidental or accessory thereto." Consistent with this regulation, the deed transferring the property contained a restrictive covenant limiting the use of the property to "water supply purposes or purposes incidental or accessory thereto."[3] The Greenwich Water Company erected a water tower on the property that was 114 feet in height and 50 feet in diameter. After King Merritt Acres, Inc., transferred the property to the

---

[2] The defendants appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] The restrictive covenant provided: "The Grantee [Greenwich Water Company], for itself, its successors and assigns, covenants and agrees with the Grantor [King Merritt Acres, Inc.], its successors and assigns that said premises and the structures and improvements erected and maintained thereon shall be used for water supply purposes or purposes incidental or accessory thereto."

Greenwich Water Company, it conveyed the lots in the King Merit Acres subdivision currently owned by the plaintiffs to the plaintiffs' predecessors in title.

In December, 2000, the Greenwich Water Company's successor in interest, the Connecticut-American Water Company, entered into a lease with Verizon authorizing Verizon to install a wireless telecommunications facility (facility) on the property. The proposed facility included "[twelve] panel-type antennae attached to the railing of the water tower at approximately [sixty-five] feet above ground level . . . [twelve] antenna cables, leading from the antennae . . . a [twelve foot by twenty foot] equipment shelter less than [one] story in height located at the base of the water tower; and . . . [two] ground air conditioning condensers surrounded by a noise attenuation structure." On April 3, 2002, Verizon applied to the town planning and zoning commission (commission) for approval of the site plan for the proposed facility. On April 26, 2002, the Connecticut-American Water Company assigned the lease to Aquarion. On July 30, 2002, the commission approved Verizon's site plan application.

Thereafter, the plaintiffs brought this action against the defendants alleging breach of the restrictive covenant and seeking, inter alia, temporary and permanent injunctions against the installation of the facility and a judgment declaring that the restrictive covenant prohibits the use of the property "for anything other than for water supply purposes or purposes incidental or accessory thereto." The defendants filed separate motions for summary judgment claiming that the plain language of the restrictive covenant precluded the plaintiffs' interpretation that it allowed uses related to water supply only and that, therefore, the defendants were entitled to judgment as a matter of law. The plaintiffs filed a cross motion for summary judgment claiming that the restrictive covenant precluded the defendants

from using the property for the proposed facility as a matter of law. The court granted the plaintiffs' cross motion for summary judgment and rendered judgment declaring that the property could be used for water supply and uses related to water supply only. Verizon appealed to the Appellate Court and we transferred the appeal to this court.

Thereafter, this court sua sponte raised the question of whether there was an appealable final judgment because the trial court had not ruled on the plaintiffs' claim for injunctive relief. Verizon withdrew its appeal and the parties submitted to the trial court a joint motion for entry of judgment in which the plaintiffs withdrew all of the counts and causes of action in their complaint except for the request for declaratory judgment. The trial court granted the motion and rendered judgment thereon, from which Verizon appealed. Verizon claims on appeal that the trial court improperly interpreted the language of the restrictive covenant to prohibit the installation of the proposed facility. We disagree.

As a preliminary matter, we set forth the applicable standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of

decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Cogan* v. *Chase Manhattan Auto Financial Corp.*, 276 Conn. 1, 6–7, 882 A.2d 597 (2005).

"Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . Although the words in a restrictive covenant are to be interpreted in their ordinary and popular sense, if any of the words have acquired a particular or special meaning in the particular relationship in which they appear, such particular or special meaning will control." (Citation omitted; internal quotation marks omitted.) *Southbury Land Trust, Inc.* v. *Andricovich*, 59 Conn. App. 785, 788–89, 757 A.2d 1263 (2000). "A restrictive covenant must be narrowly construed and ought not to be extended by implication. *Neptune Park Assn.* v. *Steinberg*, 138 Conn. 357, 361, 84 A.2d 687 (1951). Moreover, if the covenant's language is ambiguous, it should be construed against rather than in favor of the covenant. *Hooker* v. *Alexander*, 129 Conn. 433, 436, 29 A.2d 308 (1942)." *5011 Community Organization* v. *Harris*, 16 Conn. App. 537, 541, 548 A.2d 9 (1988).

We conclude that the language of the restrictive covenant limiting the use of property to "water supply purposes or purposes incidental or accessory thereto" clearly and unambiguously limited the use of the property to uses related to water supply. The word "accessory" is defined as "aiding or contributing in a secondary way" or "present in a minor amount and

not essential as a constituent," for example, as "an [accessory] mineral in a rock." Merriam-Webster's Collegiate Dictionary (10th Ed. 1993). "Incidental" is defined as "being likely to ensue as a chance or minor consequence" or "occurring merely by chance or without intention or calculation." Id. The use of the word "thereto" in the restrictive covenant clearly was intended to tie the incidental or accessory purpose to the primary purpose of water supply and, therefore, rules out the second alternative definition of each of these words. Thus, allowable uses must aid, contribute to or be likely to ensue from the primary use of water supply.

This interpretation is consistent with our decision in *Lawrence* v. *Zoning Board of Appeals*, 158 Conn. 509, 264 A.2d 552 (1969). In *Lawrence*, we construed a zoning ordinance that defined " 'accessory building or use' " as " '[o]ne which is subordinate and customarily incidental to the main building and use on the same lot.' " Id., 510 n.1. We stated that "[t]he word 'incidental' as employed in a definition of 'accessory use' incorporates two concepts. It means that the use must not be the primary use of the property but rather one which is subordinate and minor in significance. Indeed, we find the word 'subordinate' included in the definition in the ordinance under consideration. But 'incidental,' when used to define an accessory use, must also incorporate the concept of reasonable relationship with the primary use. It is not enough that the use be subordinate; it must also be attendant or concomitant. To ignore this latter aspect of 'incidental' would be to permit any use which is not primary, no matter how unrelated it is to the primary use." Id., 512

The defendants argue, however, that *Lawrence* does not govern the present case because, in *Lawrence*, this court was construing an ordinance that defined the term " 'accessory' " by using the term " 'incidental,' "

while, in the restrictive covenant at issue here, those terms are used in the alternative. See id., 510 n.1. They argue that the terms must be construed to have entirely different meanings in the restrictive covenant in order to avoid redundancy. See *United Illuminating Co.* v. *Wisvest-Connecticut, LLC,* 259 Conn. 665, 674, 791 A.2d 546 (2002) ("[t]he law of contract interpretation militates against interpreting a contract in a way that renders a provision superfluous"). We disagree. In *Lawrence,* we recognized that, in the land use context, the term "accessory use" traditionally connotes a relationship with the primary use. *Lawrence* v. *Zoning Board of Appeals,* supra, 158 Conn. 512. Because the term "incidental" was used to define "accessory use" in that case, we concluded that the term "incidental" also connoted a relationship with the primary use. Thus, we recognized that the terms are similar and that their meanings overlap to some degree as used in that context. It does not follow that the words are completely synonymous or that they cannot be used disjunctively in a contractual context unless they are given entirely different meanings. Defining a word by its very nature requires the use of other words that have similar but not identical meanings. Thus, our conclusion in the present case that both accessory purposes and incidental purposes must have a relationship to the primary purpose of water supply does not render the term "incidental" superfluous. It is not necessarily the case that any use that aids or contributes to the primary use also ensues as a consequence of that use. In any event, even if our interpretation rendered the terms "accessory" and "incidental" redundant, that result would be preferable to an interpretation that would require us to give a meaning to the word "incidental" that it clearly was not intended to have.

The defendants also argue that the restrictive covenant cannot be read to exclude uses not related to water

supply because: (1) ambiguous limitations on usage contained in a restrictive covenant must be construed against the covenant; (2) such an interpretation would render the entire phrase "or purposes incidental or accessory thereto" superfluous; and (3) the proposed use is consistent with public policy. We have concluded, however, that, to the extent that the words "accessory" and "incidental" are ambiguous, the use of the word "thereto" in the restrictive covenant clearly and unambiguously indicates that any subordinate uses of the property must be related to the primary use of water supply. The defendants' interpretation would require us to rewrite the restrictive covenant to allow "water supply purposes or other accessory or minor purposes." Moreover, our interpretation does not render the phrase "or purposes incidental or accessory thereto" superfluous. The construction of a road, for example, is not a water supply use in and of itself, but might contribute to the use of the property for that purpose and, therefore, could be an accessory use. Finally, the fact that the use of the property to operate a wireless communications facility might advance the public policy favoring universal access to telecommunications services does not permit this court to ignore the clear and unambiguous language of the restrictive covenant prohibiting such a use.

The judgment is affirmed.