******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ROBERT CASNER *v.* RAYMOND E. ROBERTS ET AL.
## (AC 47463)

Suarez, Seeley and Eveleigh, Js.

*Syllabus*

The defendant property owners appealed from the trial court's judgment determining that they had breached the terms of a restrictive covenant that runs with their property by constructing a six car commercial garage and operating a commercial roofing business therefrom without having received prior approval from the plaintiff, the owner and developer of the subdivision where the defendants' property was located. The defendants claimed, inter alia, that the court improperly determined that the three year statute of limitations (§ 52-575a) did not bar the plaintiff's action. *Held*:

The trial court properly determined that the plaintiff's action was not barred by § 52-575a, as the three year limitation period of § 52-575a was suspended by Governor Ned Lamont's Executive Order No. 7G, seven and one-half months after the plaintiff was notified of the defendants' construction of the garage, and the plaintiff subsequently commenced the present action less than eighteen months after the suspension of § 52-575a was lifted by Executive Order No. 10A.

The trial court did not abuse its discretion in denying the defendants' request to amend their special defenses to include laches, which was based on their assertion that the plaintiff had more knowledge than the ordinary person concerning the town's municipal building department operations and information, as the plaintiff's trial testimony did not reasonably reflect that he had or should have had the special knowledge asserted by the defendants, and the existence or nonexistence of that knowledge on the part of the plaintiff was not relevant.

This court declined to review the defendants' claim that the trial court improperly determined that the restrictive covenant was enforceable, as this claim was raised by the defendants for the first time on appeal.

The trial court's determination that the defendants had violated the restrictive covenant by failing to obtain the plaintiff's approval for the construction of the six car garage was not clearly erroneous and was legally sound, as the terms of the restrictive covenant regarding what constituted a permissible residential garage were clear and unambiguous, and the court, as the trier of fact and sole arbiter of credibility, clearly accepted the plaintiff's testimony that the defendants' garage accommodated six cars and was commercial in appearance, and the question of whether the plaintiff's approval was unreasonably withheld was not reached because the parties stipulated that the defendants constructed the garage without plan approval from the plaintiff.

The trial court did not abuse its discretion in granting the plaintiff's requested equitable relief and ordering the defendants, inter alia, to erect a fence, as the

court weighed competing equities, acknowledged the burden that the remedy requested by the plaintiff would have on the defendants, and exercised its discretion in favor of the plaintiff.

The trial court improperly interpreted the restrictive covenant as prohibiting all commercial use of the defendants' property, as language in the restrictive covenant permits the display of one commercial sign for an office within a residence, indicating that, although the restrictive covenant generally envisions residential use, it does not preclude all commercial uses of a property, and, accordingly, the court's injunction ordering the defendants to cease and desist all commercial use of their property was overly broad and the imposition of a fine could not stand.

Argued September 15, 2025—officially released February 3, 2026

*Procedural History*

Action to recover damages for, inter alia, breach of a restrictive covenant, and for other relief, brought to the Superior Court in the judicial district of Middlesex and tried to the court, *Swienton, J.*; judgment for the plaintiff, from which the defendants appealed to this court. *Reversed in part*; *further proceedings*.

*Sandra R. Stanfield*, for the appellants (defendants).

*Deborah L. Barbi*, for the appellee (plaintiff).

*Opinion*

EVELEIGH, J. The defendants, Raymond E. Roberts (Raymond) and Jacqueline Roberts, appeal from the judgment of the trial court rendered in favor of the plaintiff, Robert Casner. On appeal, the defendants claim that the court (1) improperly determined that the statute of limitations, General Statutes § 52-575a, did not bar the plaintiff's claims, (2) abused its discretion in denying their request for leave to file an amended special defense, (3) improperly determined that a restrictive covenant was enforceable against the defendants, (4) improperly (a) determined that they breached the terms of the restrictive covenant by constructing an unauthorized garage without prior approval and (b) ordered them to make architectural changes to the garage and to erect a fence, and (5) improperly interpreted the restrictive covenant as precluding all business use of their property and, in

so doing, abused its discretion in fashioning an overly broad cease and desist order. We disagree with claims one through four raised by the defendants. We agree, in part, with the defendants' last claim. Accordingly, we reverse in part and affirm in part the judgment of the trial court and remand the case to the trial court for further proceedings according to law.

The following relevant facts, as stipulated to by the parties or as found by the court, are as follows. The plaintiff, a residential real estate developer, owned a subdivision development in East Haddam known as Southwinds. On April 15, 2016, the defendants acquired lot 6 of that subdivision, commonly referred to as 6 Southwinds Road, Moodus (East Haddam), by warranty deed. The plaintiff moved into his residence at 1 Southwinds Road in June or July, 2019, but has since moved out of that home. He still owns lot 3.

The defendants' lot, like all lots in the Southwinds subdivision, was subject to a Declaration of Restrictions and Covenants (restrictive covenant), which runs with the land for a period of thirty years from the date of recording, which was September 15, 1999. Paragraph 1 of that restrictive covenant provides that no structures shall be erected or maintained on the lot except a single, one-family residence building for use and occupancy by one family only; one private garage for not more than three cars, except with the written approval of the owner; and outbuildings as are commonly used in conjunction with a private residence. It further provides in paragraph 12 that, as long as the plaintiff owns any lot within the Southwinds subdivision, he shall have the right to approve the architectural plan for any structures constructed on any lot, which approval shall not be unreasonably withheld. Additionally, paragraph 6 permits the display of one professional sign for an office within the residence.

In August, 2019, the owners of lot 4, which is adjacent to the defendants' property, informed the plaintiff that the defendants had constructed a garage on their

property. Additionally, Raymond received two home occupation approvals from the administrator of the East Haddam Land Use Office and uses his property for his slate roofing business, Affordable Slate Roofing, LLC, which lists as its address 6 Southwinds Road. On November 17, 2020, the defendants were issued a notice of violation by the East Haddam Planning and Zoning Commission, Land Use Department, for conditions at the defendants' property in violation of the East Haddam zoning regulations pertaining to the permitted home occupation, noting, among other things, that pallets of construction materials were stored visibly from the street and that heavy construction equipment was stored on the property.

In 2022, the plaintiff brought an action against the defendants alleging, in his operative amended complaint, that the defendants breached the restrictive covenant by (1) constructing an unauthorized outbuilding and (2) using that outbuilding for a commercial enterprise. The defendants filed an answer and special defense, asserting that the plaintiff's claims were barred by the applicable statute of limitations, § 52-575a.

In a February 28, 2024 memorandum of decision, the court rejected the defendants' special defense and concluded that the plaintiff prevailed on both of his claims. Concerning the defendants' breach of the restrictive covenant for the construction of an outbuilding without prior approval, the court ordered the defendants to submit to the court within thirty days a proposal to make architectural changes to align it with the residential nature of the Southwinds subdivision, as well as a proposal for the erection of a fence and landscaping in order to act as a buffer. Concerning the defendants' breach of the restrictive covenant for the business use of their property, the court ordered them to cease and desist all commercial operations of Affordable Slate Roofing, LLC, from their property, and gave them ninety days to relocate the business, assigning a penalty of $100 per day for every day past that ninety day period that the

defendants continue to house the commercial business on the premises. This appeal followed. Additional facts will be set forth as necessary.

I

The defendants claim that the court improperly determined that § 52-575a did not bar the plaintiff's claims. We disagree.

"The question of whether a party's claim is barred by the statute of limitations is one of law subject to plenary review." *Haas* v. *Haas*, 137 Conn. App. 424, 432, 48 A.3d 713 (2012). The existence of knowledge, either actual or constructive, is a question of fact. See, e.g., *Maffucci* v. *Royal Park Ltd. Partnership*, 243 Conn. 552, 564–65, 707 A.2d 15 (1998). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Haas* v. *Haas*, supra, 432.

Section 52-575a provides in relevant part: "No action or any other type of court proceeding shall be brought to enforce a private restriction recorded in the land records of the municipality in which the property is located or a notation on a filed map pertaining to the use of privately owned land, the type of structures that may be erected thereon or the location of same unless such action or proceeding shall be commenced within three years of the time that the person seeking to enforce such restriction had actual or constructive knowledge of such violation. . . ."

The defendants argue that the plaintiff had constructive knowledge in October, 2018, of their breach of the restrictive covenant when they began construction on their property of an outbuilding garage. This argument is without merit.

The three year statute of limitations set forth in § 52-575a does not begin to run until a plaintiff knows or

reasonably should have known of the violation. We note that it is the burden of the defendants, who asserted the special defense, to demonstrate that the plaintiff failed to commence the present action alleging violations of the restrictive covenant within three years after he had either actual or constructive knowledge of the alleged violations. See, e.g., *O & G Industries, Inc.* v. *American Home Assurance Co.*, 204 Conn. App. 614, 625, 254 A.3d 955 (2021) (defendant bears burden of proving special defenses by fair preponderance of evidence).

The court rejected the argument raised in the defendants' posttrial brief that the plaintiff had constructive knowledge of the alleged violations of the restrictive covenant when Raymond was issued a building permit for the garage on August 15, 2018, or at least by the fall of 2018 when "nearly forty-five loads carried by large semi-sized tractors with dump body trucks brought sand and gravel to the defendants' property for site work to construct a three car garage."[1] The court stated that "[t]he defendants attempt to argue that the plaintiff had constructive notice of the violations on August 15, 2018, when the building department issued a permit for the construction of the outbuilding, and thereafter. The court cannot find any credible evidence to support that claim." Rather, the court found that, in August 2019, the owners of lot 4, which is adjacent to the defendants' property, informed the plaintiff that the defendants had constructed a garage. The court also found that the plaintiff did not move into his lot on Southwinds Road until June or July, 2019, and that both of his lots were

[1] The defendants claim, for the first time on appeal, that the plaintiff had constructive knowledge of the use of their property for a slate roofing company in May, 2016, subsequent to when the East Haddam Land Use Office approved Raymond's first home occupation application for a business permit. We decline to review this claim because we "will not review a claim that is not distinctly raised at trial. . . . A claim is distinctly raised if it is so stated as to bring to the attention of the court the precise matter on which its decision is being asked." (Emphasis omitted; internal quotation marks omitted.) *Commissioner of Mental Health & Addiction Services* v. *Saeedi*, 143 Conn. App. 839, 856, 71 A.3d 619 (2013).

reached on the Southwinds Road cul-de-sac without driving past the defendants' property located at lot 6 on the opposite side of the street.

The court found that §52-575a was tolled by Governor Ned Lamont's pandemic related executive orders. Executive Order No. 7G, effective March 19, 2020, provides in relevant part: "I hereby suspend, for the duration of this public health and civil preparedness emergency, unless earlier modified or terminated by me, all statutory . . . (2) . . . statutes of limitation . . . including, but not limited to, the following . . . e. All statutes of limitations provided in Chapter 926 of the General Statutes. . . . Unless otherwise specified herein, this order shall take effect immediately and shall remain in effect for the duration of the public health and civil preparedness emergency, unless earlier modified by me." Executive Order No. 10A, effective February 8, 2021, provides in relevant part: "[T]he provisions of Executive Order No. 7G, Section 2, dated March 19, 2020 . . . as they relate to the following, shall expire on March 1, 2021 . . . b. all statutory time requirements . . . including, but not limited to . . . iii. All statutes of limitations provided in Chapter 926 of the Connecticut General Statutes. . . ."

The defendants acknowledge that Governor Lamont's Executive Orders Nos. 7G and 10A suspended statutory time requirements, including statutes of limitations, from March 19, 2020, to March 1, 2021. They, however, argue that the language of Executive Order No. 7G suspends, but does not toll, statutes of limitations and, furthermore, that Executive Order No. 7G does not toll statutes of repose, such as §52-575a. The defendants' argument is unavailing.

The express language of Executive Order No. 7G applies to *all* statutes of limitations, including, but not limited to, those provided in chapter 926 of the General Statutes, in which §52-575a is set forth. There is no distinction in Executive Order No. 7G or within Connecticut law

between statutes of limitations and statutes of repose.[2] See *State* v. *Lombardo Bros. Mason Contractors, Inc.*, 307 Conn. 412, 443, 54 A.3d 1005 (2012) (no distinction in Connecticut law between statutes of limitations and statutes of repose). Additionally, although Executive Order No. 7G uses the word "suspend," our Supreme Court has noted that the term "toll" is a synonym for the term "suspend." *State* v. *Ali*, 233 Conn. 403, 413 n.8, 660 A.2d 337 (1995).

The three year limitation period of §52-575a was suspended as a result of Governor Lamont's Executive Order No. 7G, effective March 19, 2020, and that suspension subsequently was lifted on March 1, 2021, by Governor Lamont's Executive Order No. 10A. The court found that the plaintiff was notified of the defendants' construction of the garage in August, 2019, approximately seven and one-half months before the March 19, 2020 effective date of Executive Order No. 7G. The plaintiff commenced the action on August 19, 2022, less than eighteen months after the suspension of the three year statute of limitations had been lifted on March 1, 2021. Accordingly, we conclude that the court properly determined that the plaintiff's action was not barred by the three year time limit in §52-575a.

II

The defendants next claim that the court abused its discretion in denying their request for leave to file an amended special defense to include laches.[3] We disagree.

"Whether to allow an amendment is a matter left to the sound discretion of the trial court. [An appellate]

---

[2] "While statutes of limitation[s] are sometimes called statutes of repose, the former bars [a] right of action unless it is filed within a specified period of time after injury occurs, while statute[s] of repose [terminate] any right of action after a specific time has elapsed, regardless of whether there has as yet been an injury." (Internal quotation marks omitted.) *Baxter* v. *Sturm, Ruger & Co.,* 230 Conn. 335, 341, 644 A.2d 1297 (1994).

[3] The defendants also argue that the court erred in failing to find in their favor on their special defense of laches. Because we conclude that

court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. . . . It is the [defendant's] burden . . . to demonstrate that the trial court clearly abused its discretion. . . . A trial court may allow, in its discretion, an amendment to pleadings before, during, or after trial to conform to the proof. . . . Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The essential tests are whether the ruling of the court will work an injustice to either the plaintiff or the defendant and whether the granting of the motion will unduly delay a trial." (Internal quotation marks omitted.) *Fountain Pointe, LLC* v. *Calpitano*, 144 Conn. App. 624, 640, 76 A.3d 636, cert. denied, 310 Conn. 928, 78 A.3d 147 (2013).

"Laches consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant." (Internal quotation marks omitted.) *Burrier* v. *Burrier*, 59 Conn. App. 593, 596, 758 A.2d 373 (2000).

A trial took place on November 1, 2023. On November 21, 2023, the defendants filed a request for leave to amend their special defenses to include laches, reasoning that it was discovered during the plaintiff's testimony that he has or should have more knowledge than an ordinary person concerning the town's municipal building department operations and information, and, therefore, he knew or should have known about the defendants' construction of the garage either on August 15, 2018, when the defendants were issued a building permit, or in October, 2018, when building materials were delivered to the defendants' property. The court denied the defendants' request for leave to amend their special defenses, reasoning that it was unaware of any evidence in the record supporting the defendants' assertion that the plaintiff had more knowledge than an ordinary person

the court did not abuse its discretion in denying their request for leave to file an amended special defense, we do not address this argument.

concerning the town's municipal building department operations and information and that, even if such evidence had been offered, it was not relevant.

The defendants have failed to demonstrate that the court abused its discretion in denying their request to amend their special defenses. The court determined that the asserted special defense, which relied on the notion that the plaintiff had or should have more knowledge than an ordinary person concerning the town's municipal building department operations and information, did not conform to the proof. On the basis of our review of the plaintiff's trial testimony, which does not reasonably reflect that he had or should have had the special knowledge asserted by the defendants, and on the basis of the court's sound determination that the existence or nonexistence of such knowledge on the part of the plaintiff was not relevant, we conclude that the court's ruling does not reflect an abuse of its discretion.

## III

The defendants next claim that the court improperly determined that the restrictive covenant was enforceable. Specifically, they contend that the restrictive covenant lacks substantial uniformity and, therefore, enforcement would be inequitable because some provisions are applicable only to lots of a certain acreage and because some lots in the Southwinds subdivision are allowed to have a three car garage while the defendants were not. We decline to review this unpreserved claim.

The court found that the restrictive covenant was uniformly contained in all deeds executed by the plaintiff, who divided his property into building lots under a general development scheme.[4] The court further determined

[4] "Restrictive covenants generally fall into one of three categories: (1) mutual covenants in deeds exchanged by adjoining landowners; (2) uniform covenants contained in deeds executed by the owner of property who is dividing his property into building lots under a general development scheme; and (3) covenants exacted by a grantor from his grantee presumptively or actually for the benefit and protection of his adjoining land which he retains." (Internal quotation marks omitted.) *DaSilva* v.

that the restrictive covenant should be enforced because it is reflective of a common plan of development. "Restrictive covenants should be enforced when they are reflective of a common plan of development. . . . The factors that help to establish the existence of an intent by a grantor to develop a common plan are: **(1)** a common grantor sells or expresses an intent to put an entire tract on the market subject to the plan; **(2)** a map of the entire tract exists at the time of the sale of one of the parcels; **(3)** actual development according to the plan has occurred; and **(4)** substantial uniformity exists in the restrictions imposed in the deeds executed by the grantor." **(**Citation omitted; internal quotation marks omitted.**)** *DaSilva* v. *Barone*, 83 Conn. App. 365, 372, 849 A.2d 902, cert. denied, 271 Conn. 908, 859 A.2d 560 (2004). The court found that the plaintiff had proven all four factors of a common development scheme because the plaintiff "intended to sell all the lots, a map of the subdivision exists, the development did occur, and the same restrictive covenants exist in all the deeds."

The court, however, did not address the specific issue raised by the defendants on appeal. This is because they did not raise it before the trial court and, instead, raised it for the first time on appeal. "Our appellate courts, as a general practice, will not review claims made for the first time on appeal. . . . [A]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court. . . . The purpose of our preservation requirements is to ensure fair notice of a party's claims to both the trial court and opposing parties. . . . These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address

*Barone*, 83 Conn. App. 365, 371–72, 849 A.2d 902, cert. denied, 271 Conn. 908, 859 A.2d 560 (2004).

the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *Guddo* v. *Guddo*, 185 Conn. App. 283, 286–87, 196 A.3d 1246 (2018); see also Practice Book § 60-5 (appellate court is generally not bound to consider claim not distinctly raised at trial or arising subsequent to trial). Accordingly, we decline to review the defendants' unpreserved claim.

## IV

The defendants next claim that the court improperly (a) determined that they breached the terms of the restrictive covenant by constructing an unauthorized garage without approval and (b) ordered them to make architectural changes to the garage and to erect a fence. We are not persuaded.

## A

### Breach

The following legal principles and standards are relevant. "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . Although the words in a restrictive covenant are to be interpreted in their ordinary and popular sense, if any of the words have acquired a particular or special meaning in the particular relationship in which they appear, such particular or special meaning will control. . . . A restrictive covenant must be narrowly construed and ought not to be extended by implication." (Citations omitted; internal quotation marks omitted.) *Morgenbesser* v. *Aquarion Water Co. of Connecticut*, 276 Conn. 825, 829, 888 A.2d 1078 (2006). "The interpretation of definitive contract language is a question of law over which our review is plenary. . . . By contrast, the trial court's factual findings as to whether and by whom

a contract has been breached are subject to the clearly erroneous standard of review and, if supported by evidence in the record, are not to be disturbed on appeal." (Footnote omitted; internal quotation marks omitted.) *New Milford* v. *Standard Demolition Services, Inc.*, 212 Conn. App. 30, 55–56, 274 A.3d 911, cert. denied, 345 Conn. 908, 283 A.3d 506 (2022).

1

Paragraph 1B

Paragraph 1B of the restrictive covenant provides in relevant part that "[n]o structures other than the following shall be erected or maintained on said lot. . . . One private garage for not more than three (3) cars, except with the written approval of [o]wner or his designee for this purpose."

The defendants argue that the court erred in failing to find that their outbuilding was a three car garage. Specifically, they contend that it constitutes a three car garage because it has three bays and three doors and that, as such, they were not required to obtain the plaintiff's approval for its construction pursuant to paragraph 1B. They note that paragraph 1B contains no size limitations and argue that, if the language "one private garage for not more than three cars" could "be defined differently than a garage with three doors, the paragraph is arguably ambiguous . . . ." We are not persuaded.

The court determined that "[t]he [restrictive covenant] unequivocally provides that construction of any outbuilding or private garage for more than three cars requires the written approval of the plaintiff as does the preapproval of the site plan and architectural plan for any building or structure. . . ." Specifically, the court found that "[t]he structure is a commercial building unfitting for a residential area . . . . The structure measures forty [feet] by forty [feet] with three ten [foot] by ten [foot] garage doors, which doors are much larger than doors found on a residential garage. The structure

accommodates six garage bays. . . . Raymond acknowledges that he never submitted any plans for the structure in advance to [the plaintiff] as required by the [restrictive covenant] . . . ."

Although the defendants contend that a three door, three bay garage is a three car garage, the restrictive covenant mentions neither doors nor bays. Rather, it unambiguously provides that no structure other than "[o]ne private garage for not more than three (3) cars" shall be erected or maintained on said lot except with written approval. Although the defendants argue that paragraph 1B is ambiguous if a three door garage is not considered to be a three car garage, "[w]e will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Internal quotation marks omitted.) *Community Action for Greater Middlesex Community, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 401, 757 A.2d 1074 (2000).

The court found that the three garage doors measure ten feet by ten feet and "are much larger than doors found on a residential garage" and that the garage accommodates six garage bays. The court's findings are supported by the testimony of the plaintiff, who explained that there are "three main doors but they're double width, they're double depth and so you could actually get six vehicles into that garage." He further testified that, "[b]asically, the . . . garage doors are commercial doors. They're ten feet by ten feet, that would be way out of the ordinary. Matter of fact there is no such thing as having—doing that on a residential building. Basically, we would be using a nine [foot] by seven [foot] door for the garage doors. And I think that that's something that we use all the time, it's a standard door that goes on a residential garage."

As the trier of fact and sole arbiter of credibility, the court was free to accept or reject, in whole or in part, the testimony of the plaintiff. See *Jay* v. *A & A Ventures, LLC*, 118 Conn. App. 506, 514, 984 A.2d 784 (2009). The

court clearly accepted the plaintiff's testimony that the defendants' garage doors were much larger than doors found on residential garages and that the garage accommodates six garage bays.

Therefore, according to the clear and unambiguous terms of paragraph 1B, and in light of the court's finding that the defendants constructed a six car garage, the court's determination that the defendants violated paragraph 1B by failing to obtain the plaintiff's approval for their garage is not clearly erroneous and is legally sound.

2

Paragraph 12

Although the language of paragraph 1B supports the court's determination that the defendants violated the terms of the restrictive covenant concerning their construction of a garage, we note that the court also determined that the defendants' garage construction violated paragraph 12. Paragraph 12 of the restrictive covenant provides: "So long as [the plaintiff] is the [o]wner of any [l]ot within said [s]ubdivision, said [plaintiff] shall have the right to approve the [s]ite [p]lan and architectural plan for any building, improvements or structures to be constructed upon the [l]ots to which these covenants and restrictions apply, which approval shall not be unreasonably withheld." The parties stipulated that the plaintiff owns lot 3 in the Southwinds subdivision and that the defendants constructed the garage without plan approval from the plaintiff.

The defendants argue that, according to paragraph 12, the plaintiff cannot unreasonably withhold approval and that not allowing them to have a three car garage would be unreasonable in light of the fact that lot 5 in the Southwinds subdivision has a three car garage. First, the defendants do not have a three car garage: rather, the court found that they have a six car garage. Second, because the defendants failed to ask for approval to

construct their garage, the question of whether approval was unreasonably withheld cannot be reached.

For the foregoing reasons, we conclude that the court properly determined that the defendants' construction of a six car garage violated the terms of the restrictive covenant.

## B

## Remedy

The defendants next argue that the court's equitable remedy was improper because the plaintiff "did not specifically seek any specific remedy regarding the defendants' garage, nor should he have been granted such," and that "there is no support for any issue or remedy requested such that the court was justified in ordering the defendants to erect a fence." We are not persuaded.

"The issuance of an injunction and the scope and quantum of injunctive relief rests in the sound discretion of the trier. . . . A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. . . . A prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion." (Internal quotation marks omitted.) *Welles* v. *Lichaj*, 136 Conn. App. 347, 354, 46 A.3d 246, cert. denied, 306 Conn. 904, 52 A.3d 730 (2012). "[I]n exercising its discretion, the court . . . may consider and balance the injury complained of with that which will result from interference by injunction." (Internal quotation marks omitted.) *Castonguay* v. *Plourde*, 46 Conn. App. 251, 266–67, 699 A.2d 226, cert. denied, 243 Conn. 931, 701 A.2d 660 (1997). "[T]he general rule requiring that substantial irreparable injury must threaten before an injunction will issue is subject to an exception. A restrictive covenant may be enforced by injunction without a showing that violation of the covenant will cause harm to the plaintiff, so long as such relief is not inequitable."

*Hartford Electric Light Co.* v. *Levitz*, 173 Conn. 15, 22, 376 A.2d 381 (1977). "When presented with a violation of a restrictive covenant, the court is obligated to enforce the covenant unless the defendant can show that enforcement would be inequitable." *Gino's Pizza of East Hartford, Inc.* v. *Kaplan,* 193 Conn. 135, 139, 475 A.2d 305 (1984).

The plaintiff requested in the operative amended complaint "[s]uch other and further relief as the court deems just and equitable, both at law and in equity to protect the plaintiff's rights." In his posttrial brief, the plaintiff specifically requested architectural changes to the defendants' garage and the erection of a fence. The court ordered that "the defendants submit to the court within thirty (30) days a proposal to make architectural changes to the outbuilding to align it with the residential nature of Southwinds development, as well as a proposal for the erection of a fence and landscaping in order to act as a buffer and shield for the adjoining lot and visibility from the street. The plaintiff shall have the right to request a hearing within ten (10) days of the receipt of the proposal. Should the plaintiff fail to do so, the court shall consider both proposals and make orders accordingly."

In its memorandum of decision, the court weighed the competing equities, acknowledged the burden that the remedy requested by the plaintiff would have on the defendants, and exercised its discretion in favor of the plaintiff, stating that he has the right to the defendants' compliance with the term of the restrictive covenant. It is apparent that the trial court considered, weighed, and balanced the opposing equities in granting the injunction. We cannot conclude that the court's granting of the equitable relief requested amounted to an abuse of its discretion.

V

The defendants last claim that the court improperly interpreted the restrictive covenant as precluding all business use of their property because their use of the

property for a slate roofing business did not violate the terms of the covenant and that the court abused its discretion in fashioning an overly broad order. We disagree with the defendants' argument only to the extent that we conclude that the court properly determined that the defendants' business use of their outbuilding garage violated paragraph 1C of the restrictive covenant. We, however, agree with the defendants' argument that the court improperly interpreted the restrictive covenant as prohibiting all business use of their property and, as a result, fashioned an overly broad cease and desist order.

The interpretation of definitive contract language is a question of law over which our review is plenary, and the trial court's factual findings as to whether the restrictive covenant has been breached are subject to a clearly erroneous standard of review. See *New Milford* v. *Standard Demolition Services, Inc.*, supra, 212 Conn. App. 55–56.

The court found that Raymond operates "his commercial business out of his home, which business is a home improvement business, specifically a slate roofing company. Due to the nature of the business, there are heavy trucks and cargo style trailers on the parcel" and "[t]here are construction materials consisting of pallets of slate roofing materials being stored outside." In concluding that the defendants breached the restrictive covenant by engaging in the unauthorized use of their property for commercial purposes, the court reasoned that, "[a]lthough the [restrictive covenant] does not specifically state that the property shall not be used for commercial purposes, it does provide [in paragraph 1C] that any outbuildings located on the property shall be ones 'commonly used in conjunction with a private residence.' . . . The evidence showed that the outbuilding housed commercial vehicles used in conjunction with the business operated by [Raymond] and that materials used in connection with the slating business were stored on the property visible from the road. The [restrictive covenant] provided that the plaintiff subdivided his property 'for

the purpose of establishing a residential area limited solely to the construction of single-family residences.' . . . The operation of a commercial business is contrary to the [restrictive covenant] and the commercial nature of the building is unfitting for a residential area."

The court determined that the defendants' business use of their property violated the terms of the restrictive covenant in the following two ways. First, it violated paragraph 1C, which provides in relevant part that "[n]o structures other than the following shall be erected or maintained on said lot. . . . Such outbuildings as are commonly used in conjunction with a private residence, provided the plans and location thereof have received the written approval of [o]wner or his designee for the purpose." Second, the court determined that the defendants' commercial use of the property violated the general principles of the restrictive covenant providing for single family use. Specifically, at the outset, the restrictive covenant provides that "the [o]wner has subdivided said [l]ots for the purpose of establishing a residential area limited solely to the construction of single family residences." We address each alleged violation in turn.

We first conclude that the court's interpretation and application of paragraph 1C was both legally sound and supported by the evidence. By its plain and unambiguous terms, paragraph 1C provides that no structure shall be "erected or maintained" except outbuildings that are "commonly used in conjunction with a private residence." This provision clearly contemplates residential use of outbuildings as opposed to commercial use. See, e.g., *Neptune Park Assn.* v. *Steinberg*, 138 Conn. 357, 361–62, 84 A.2d 687 (1951) (restrictive covenant providing that no structure except "dwelling house" shall be erected on premises "refer[s] to a building erected in such a form that it is designed to be occupied as a dwelling as distinguished from a place of business").

The court found that the defendants used their outbuilding garage for a slate roofing business. Evidence adduced at trial supports this finding. The defendants'

2019 application with the East Haddam Land Use Office for a home occupation business permit, which was admitted as a full exhibit at trial, specified garage storage of equipment. The plaintiff testified that "[w]hat's, basically, happening on lot 6 is . . . a business, a commercial business is on that property," which is "just contrary to all of the other residency in this area that there's a business going on here." He further explained that "[t]here are heavy trucks. Slate roofing is a—it's a . . . heavy business. It's . . . heavy stuff so you have heavy trucks. They have trailers, which are, again, heavy-duty trailers. These trailers have to carry multiple stuff of slate or demolition or whatever they have on them. And they're also are trailers with, basically, machinery, basically." Accordingly, the court's determination that the defendants violated the terms of the restrictive covenant by using their outbuilding garage for commercial purposes in violation of paragraph 1C is not clearly erroneous and is legally sound.

Second, the restrictive covenant provides at the outset that "the [o]wner has subdivided said [l]ots for the purpose of establishing a residential area limited solely to the construction of single family residences." On the basis of this language and the language in paragraph 1 limiting structures to use by one family only and limiting outbuildings to those commonly used in conjunction with a private residence, it is clear that, in general, the restrictive covenant permits only single family residential uses.

Paragraph 6, however, provides in relevant part that "[n]o sign of any kind shall be displayed to public view on any lot except one professional sign for an office within the residence and used in conjunction therewith by an occupant thereof . . . ." Given this language, it is clear that, although the restrictive covenant generally envisions residential use, it does not preclude *all* business uses of a property. Accordingly, we conclude that the court improperly interpreted the restrictive covenant as prohibiting all commercial use of the defendants' property. It naturally follows from this conclusion that the

court's injunction ordering the defendants to cease and desist *all* commercial use of their property is overly broad and that its imposition of a fine cannot stand as well.[5] Consistent with the principles expressed in this opinion, and in light of the court's proper determination that the defendants breached paragraph 1C and the language in paragraph 6 of the restrictive covenant, we remand the case to the trial court for further proceedings as to the second count of the complaint.[6]

The judgment is reversed only as to count two with respect to the trial court's determination that the restrictive covenant prohibits all business use of the property and as to the trial court's cease and desist order and its imposition of a fine, and the case is remanded for further

[5] Specifically, the court "order[ed] that the defendants cease the commercial operation of the business known as Affordable Slate Roofing, LLC, from their property located at 6 Southwinds Road, Moodus (East Haddam). The defendants shall have ninety (90) days to relocate the business. Should the defendants fail to do so, a penalty of $100 per day shall be issued for every day past the ninety days the defendants continue to house the commercial business on the premises."

[6] The defendants also argue that it is unclear whether the court's cease and desist order requires his trucks to be permanently removed from the property and further argues that there was no evidence at trial that they violated paragraph 7 of the restrictive covenant. Paragraph 7 of the restrictive covenant provides: "No motor vehicle of more than two ton carrying capacity shall be regularly parked on said lot, except currently registered passenger motor vehicles; and except that on lots of four (4) acres or more, motor vehicles of more than two ton carrying capacity may be parked on said lot within a garage. No boat, truck, or motor home shall be regularly parked on a lot, except behind the line of the rear wall of the residence building extended to both sidelines of said lot."

In its memorandum of decision, the court mentioned paragraph 7, found that the defendants' trucks were "heavy," and further found that the outbuilding garage housed commercial vehicles used in conjunction with the business, but made no specific finding as to whether the defendants violated paragraph 7 and made no specific mention of the trucks in its cease and desist order. In light of our determination that the court improperly determined that the restrictive covenant prohibits all business use of the property and improperly fashioned an overly broad order, we need not further address the defendants' argument on appeal concerning the trucks as it is more appropriately addressed by the trial court on remand.

proceedings with respect to count two; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.